## JAMES SHANNON v. WILLIAM S. TAYLOR.

It is well settled, by the decisions of this Court, upon general principles as well as by the statute of February 2nd, 1844, (Hart. Dig. p. 344,) that in an action for the specific performance of a contract made by the testator or intestate, for the conveyance of land, it is not necessary that the heirs should be made parties in order to bind them.

The simple circumstance that no order of the Probate Court appears, continuing the Term of administration from year to year, under former statutes, will not invalidate the lawful acts of the administrator or executor, done in due course of administration.

In the absence of fraud, a decree of the District Court against an executor or administrator, for the conveyance of land, is conclusive against the heirs.

Where a plaintiff obtained a decree of the District Court, for one half of a tract of land, against an executor, the executor to have the first choice, and there was no regular partition, but the heirs divided the tract in two, and then divided the south half amongst themselves, it was held that the plaintiff could maintain an action of trespass to try title against one of the heirs, who intruded upon the north half.

See this case as to presumption of the novation or renewal of an illegal contract, after the removal of the legal inhibition.

Where evidence offered by the appellee had been excluded, the Court said : The evidence in question ought clearly to have been admitted ; and, if admitted, the verdict could not legally have been different ; and it is manifest the result must be the same upon another trial : and, as applications for new trials, and the granting of them, depend upon equitable principles, we think it may well be held, that a new trial in this case was rightly refused, and, consequently, that the refusal of it does not require a reversal of the judgment, though the evidence admitted should be deemed insufficient to warrant the verdict.

An objection that the petition, in an action of trespass to try title, was not indorsed to the effect that the suit was brought as well to try title as for damages, cannot be taken in arrest of judgment.

Appeal from Walker.   Tried before the Hon. Constantine W. Buckley.

*A. P. Willey* and *Peter W. Gray*, for appellant.

*Yoakum & Branch*, for appellee.

WHEELER, J.   The record presents a history of the actings of the parties in interest, in relation to the subject of the present controversy, extending through a period of twenty years, and various rulings of the Court upon the trial, which, in the view we entertain of the merits of the case, it does not become necessary to examine in detail.   The decision of the case, in our opinion, depends upon the application of the well settled rules of law, to a few evident and indisputable facts, disclosed by the record, and does not necessarily involve an inquiry into all the various questions, which were raised upon the trial, and have been examined with unusual research and ability by counsel for the appellant.   Interesting as the examination of those questions might be, with the aid of the ample arguments of counsel, as it is not essential to the decision of the case, we shall decline to enter upon it, and shall direct our inquiries to the matters of fact and of law, which we deem necessary to our decision.

It appears by the records of the Probate and District Courts of Montgomery County, that John Shannon, the ancestor of the defendant, (now appellant,) departed this life in 1838, testate, having received a title to the league of land, a part of which is the subject of this suit; that Jacob Shannon and William Burney qualified as his executors under the will, and received letters testamentary thereupon, at the June Term of the Probate Court of Montgomery County, in the same year. Subsequently one of the executors, Burney, departed this life; and his co-executor, Shannon, continued in the exercise of his trust, as sole surviving executor, by authority of the Probate Court, so recognized by the heirs of the testator, until final settlement was had and he was discharged, by order of the Probate Court, at its May Term, 1853.

In 1841, the plaintiff, as sole heir of Thomas Taylor, deceased, in the then Republic, brought suit in the District Court against the heirs and legal representatives of John Shannon, for the specific performance of a contract by which, in his life time, he had agreed to convey to the plaintiff's ancestor one half of his head right league of land. The case was continued from Term to Term, until the Spring Term, 1845, when the surviving executor, Jacob Shannon, appeared and answered as the representative of the estate ; and thereupon the final judgment of the District Court was rendered, decreeing a specific performance of the contract, and that the executor, as the sole surviving representative of the estate, convey to the plaintiff a title to the undivided half of the league of land, according to the terms of the contract ; which were, that the league should be divided into two parts, as nearly equal as possible, the said Shannon to have the first choice. This decree was not appealed from ; but remains the judgment of the Court.

There can be no question, that, if this decree was binding upon the heirs, it finally and conclusively determined the rights of the parties to this suit, as respects the matters adjudicated therein ; vesting in the plaintiff the title to the undivided half of the league of land, in question, subject only to the election of the legal representative of the estate, or the heirs, in the choice of halves, upon a division or partition.— But the Court refused to admit it in evidence, and it is insisted that it was rightly excluded, for two reasons : 1st. Because the heirs were not made parties by the service of process upon them ; 2nd. Because the functions of the executor had ceased and were determined by operation of law.

To the first objection it must be answered, that it is well settled by the decisions of this Court, that in an action for the specific performance of a contract made by the testator or intestate for the conveyance of land, it is not necessary that the heirs should be made parties in order to bind them. For the

purpose of such a suit, the executor or administrator, under the laws, as they existed at the time of the rendition of this decree, is the representative of the heirs, in respect, as well of the realty as of the personalty. (Thompson v. Duncan, 1 Tex. R. 485 ; 2 Id. 311 ; 3 Id. 427–428 ; Graham v. Vining, 2 Id. 433 ; Ottenhouse v. Burleson, 11 Id. 87.) Such suits were expressly authorized by statute to be brought in the District Court against executors and administrators, and it was declared that the decree should vest a title as good as if it had been made by the deceased in his life time. (Act of the 2nd of February, 1844, Hart. Dig. p. 344.) This statute was in force when the decree in this case was rendered ; and if, when the suit was brought, it would have been necessary to make the heirs parties, the necessity had been dispensed with by the statute, when the decree was rendered. The decree was as effectual to bind them, as if they had been made parties to the suit by the service of process upon them ; as well by this statute, as by the general principles and provisions of the laws regulating the settlement of estates. (See the cases before cited.) This objection to the decree, therefore, is not tenable.

Nor is the remaining objection well founded in fact or in law. It does not appear by the record, that the functions of the exe-. cutor had ceased. On the contrary, it appears that he continued to act as executor, by authority of the Probate Court, and that he was recognized by the heirs as the rightful executor of the estate, until long after the rendition of this decree. Some, if not all of the heirs who were of age, expressly recognized his authority in judicial proceedings in the Probate Court ; by appointment of the Court, he acted as the guardian and representative of those who were not of age, in proceedings to which all the heirs were parties ; his authority to act in the capacity of executor does not appear ever to have been questioned or doubted ; but, on the contrary, it was sanctioned and approved by the action both of the Court and the heirs. The objection rests upon the single circumstance that no order

of the Court appears, continuing the term of his administration from year to year. But no case has decided that this was sufficient to invalidate his lawful acts done in the due course of administration. On the contrary, it has been held, that an extension of the term of administration will be presumed, if necessary, to sustain the validity of such acts, when thus drawn collaterally in question. It is settled by repeated decisions of this Court, that, where the fiduciary character of one acting as administrator, has been recognized by the Probate Court, as between the heirs and those dealing with the acting administrator, his authority cannot be thus drawn in question, in a collateral action, for the purpose of invalidating his lawful acts, done in the due course of administration. (Hurt v. Horton, 12 Tex. R. 285 ; Poor v. Boyce, Id. 440 ; Howard v. Bennett, 13 Id. 314 to 316 ; Dancy v. Stricklinge, 15 Id. 557 ; Burdett v. Silsbee, Id. 604.) *A fortiori*, the authority of the executor cannot now be drawn in question by the defendant in this action, for the purpose of invalidating a solemn judgment of the Court, rendered in a cause in which he was party representing the estate ; when it is shown that he was acting as executor, with the sanction of the Probate Court ; and was recognized as the rightful executor by the present defendant, and the other heirs. The right of the plaintiff was established by the judgment of the Court in that case. It is *res adjudicata*, by a Court of competent jurisdiction ; and cannot be impeached in a collateral action, by any inquiry into the grounds on which that judgment was rendered. All inquiry upon that subject is concluded by the judgment. It is clear that the judgment ought to have been admitted in evidence ; and if admitted, it would have established conclusively the plaintiff's right to one undivided half of the league of land in question. It would not, it is true, have established his title to the particular half for which he sues. Further evidence was necessary for that purpose. It was necessary to prove that there had been a partition, or division of the land, or that which was equiva-

lent, and that the legal representative or heirs of Shannon, had exercised their election in the choice of halves. Does the record afford that proof? We think it certainly does. It is in proof that the heirs have divided the league, and have taken possession of, apportioned out, and appropriated among themselves the south half. It is unnecessary to recapitulate the evidence upon this point. It will suffice to say, that the acts of the heirs evidence an election to take the south half, as their half of the league, as certainly and conclusively as any acts of theirs could evidence, or consummate such an intention. By setting apart and appropriating to themselves the south half, they, of course, left the plaintiff no alternative but that which he adopted; that of taking the remaining half. And it is to be observed, that the right of the plaintiff in this suit, was not resisted, upon the ground that the defendant and his co-heirs had not made their election; but upon the ground that the plaintiff had no right, or interest in any part of the league.— After having thus appropriated to themselves the south half, they cannot object to the plaintiff's right to the north half, on the ground that they have not made their choice; while they manifest no willingness to make a different choice, or to assign to the plaintiff any other part of the land; but resist his claim of right to any share or interest in it.

The case then stands thus: By the judgment of a Court of competent jurisdiction, the plaintiff is entitled to an undivided half of the league, or of the survey; to be divided into two equal parts, of which the defendant and his co-heirs were to have their choice. They have separated the south from the north half, and appropriated the former to themselves. Can there be a question that, as between them and the plaintiff, the latter is entitled to the remaining north half? We think not.

Under the decisions of this Court in the case of Merle v. Andrews, (4 Tex. R. 200) and Cannon v. Hemphill, (7 Tex. R. 184,) it cannot be doubted, that the decree of the District Court was final, as respects the rights of the parties in the

subject matter therein adjudicated ; establishing conclusively the right of the plaintiff to one half of the league, subject only to the election of the defendant and his co-heirs in the choice of halves. Nothing remained but the making of their selection by the heirs, to render the decree operative to vest title in the parties to their respective shares. They have determined their election : and thereby the right of the plaintiff is also ascertained and determined. Had the decree been admitted, in evidence, as it ought to have been, it would have established the plaintiff's right to a recovery beyond a doubt ; whether the evidence admitted was sufficient for that purpose or not. If, therefore, it were considered, that the evidence, upon which the verdict was rendered was not sufficient, the defendant could derive no benefit from a reversal of the judgment ; since upon another trial, the evidence, which he caused to be improperly rejected, must be admitted ; and would be decisive against him.

Without adverting to other evidence in the case, it is by no means clear that the plaintiff was not entitled to recover upon the judgment of the Probate Court, rendered at its September Term, 1845, and the action which appears to have been taken thereupon : which was in evidence. It appears that suit had been instituted in the Probate Court for partition among the heirs of John Shannon, wherein all the heirs were parties ; those who were of age appearing in person, and those who were minors being represented by their guardian *ad litem*, appointed by the Court. The plaintiff in this suit intervened, and was also admitted as a party to the decree which was rendered, wherein it is stated, that the contract, between the ancestors of the intervenors and the heirs, was produced, " showing his right, now claimed by the said William S. Taylor to one half of the league of land, now known as the head-right league of said John Shannon, deceased :" and after reciting the appearance of the parties, it proceeds to say, " by agreement the following decree is made, and here now entered."

The decree appoints commissioners and directs them to " di- " vide the land into two or four equal portions, having respect " to quality and quantity ; of which said halves, or quarters " amounting to half, Jacob Shannon, as executor of the last " will of said John Shannon, in behalf of said heirs and dis- " tributees, is to take the first choice ; and the other half to be " allotted to the said William S. Taylor." It concludes by apportioning the costs of the partition, and directing the manner in which the half allotted to the heirs shall be set apart to them.   It is true the commissioners appointed did not effect a partition, for reasons stated in their report ; and no further action appears to have been taken by the Court.   The decree was suffered to remain, and did remain unappealed from, and, so far as appears, unquestioned in any manner, when the administration of the estate was finally settled and closed.   What the commissioners failed to do, the heirs afterwards did by selecting and partitioning among themselves the south half of the league, in 1848.   This, it would seem, carried the decree of the Probate Court into effect, as effectually, as if the partition had been made by the commissioners appointed for that purpose.

But to this it is objected, that some of the heirs were, at the time, minors, and that the parol partition is therefore invalid. It appears, however, that they were represented by their guardian ; and that their portion was set apart to them.   But if the partition was not binding as between them and their coheirs, they were parties to the decree of the Probate Court.— That Court had the power to decree the specific performance of contract in cases like the present.   (Dig. Art. 1070.)   In decreeing a partition, it necessarily passed upon the rights of the parties in the subject matter.   As between the plaintiff and the heirs, that decree, so long as it remains in force, it would seem, was binding as well upon the minor, as the adult heirs, as to the matters therein adjudged ; whether the subsequent partition by the heirs be binding or not, as between

themselves. (Cannon v. Hemphill, before cited.) There is no complaint, in this suit, that injustice was done the minor heirs in the partition ; or of any other inequality or injustice in the matter of the partition, than that which necessarily resulted from admitting the right of the plaintiff as adjudged by the decree of the Probate Court. The binding force of the decree and partition is resisted on the sole ground, that the plaintiff has no right, or interest whatever, in the subject matter of the partition. If the decree of the Probate Court establishes his right therein, as against the heirs : and they, by their acts, have determined to what particular portion of the land it must attach, there can no longer be a question between him and them as to his right. His right being established by the judgment of the Court, and it being necessary that the choice given to the heirs in making their selection, should be exercised, as well for the minors as the adults, and having been made for them by their guardian, it ought, it would seem, to be held binding upon them, under the issues in this case.— The partition must be so held, at least, in reference to the judgment of the District Court, which conclusively settles the question of title ; so long as no other objection is urged or suggested to the partition. than that it does not give the heirs what no legal partition could give them : that is, not only that which belongs to them, but that also which is the property. and right of another.

The record shows repeated acts of recognition of the plaintiff's right, by the ancestor of the defendant in his life time, and by his heirs after his death, for a period of sixteen or seventeen years after the legal disability or inhibition, which attached to the original contract, had been removed. The fact, that the contract was made when such disability attached, did not incapacitate the parties from ever afterwards contracting in respect to the same subject matter ; or from renewing their contract after the removal of the inhibition. If the acquiescence in another's claim of right, or the recognition of his title

for any length of time, will authorize the presumption, as against the party so recognizing it, that it was well founded and rightful, it ought, it would seem, to be presumed that there had been a novation or renewal of the contract, after the removal of the legal inhibition, in this case. But, in the view we have taken of the case, it is unnecessary to express a decisive opinion upon the effect of the judgment of the Probate Court, or of the repeated acts of recognition of the plaintiff's title, upon the rights of the parties ; since we do not rest our judgment upon these, but upon the effect of the decree of the District Court, and the subsequent acts of the defendant and his co-heirs ; which, under the decree, must be held to determine the rights of the parties to this suit.

That decree, as we have seen, cannot be impeached for the want of jurisdiction of the parties and the subject matter of the suit. There is no pretence that it was fraudulently obtained ; and it is manifest, from the evidence admitted in the case, and, particularly, the proceedings in the Probate Court subsequent to its rendition, and the conduct of the parties thereto, respecting the subject of it, that it could not be successfully impeached upon that ground, even if it were suggested. Nor could evidence have been admitted, under the pleadings and issues, to countervail its legal effect, if it had been admitted in evidence, upon any other ground. If the evidence which was admitted, was not sufficient to warrant the verdict, the refusal of the Court to grant a new trial ought to be supported, on the ground that, had not the plaintiff's evidence been improperly excluded, it would have well entitled him to the verdict. It was rightly rendered in his favor, upon the case, admitted and produced in evidence to the Court. It would be idle, therefore, to reverse the judgment, merely to correct an erroneous ruling committed against the appellee, in ruling out his evidence, when it is manifest, that, if the error had not been committed, the result must have been the same, and could not be different upon another trial : to say nothing

of the manifest injustice to the appellee, of such a determination against him, in consequence of a wrong done him, at the instance of the appellant. The evidence in question ought clearly to have been admitted : and if admitted, the verdict could not legally have been different ; it is manifest the result must be the same upon another trial : and, as applications for new trials and the granting of them depend upon equitable principles, we think it may well be held that a new trial in this case was rightly refused ; and consequently, that the refusal of it does not require a reversal of the judgment, though the evidence admitted should be deemed insufficient to warrant the verdict. Upon that question, however, it is unnecessary to express an opinion.

It is scarcely necessary to say that the fact, that the survey did not contain a league of land, cannot affect the validity of the decree for specific performance. What portion of the survey the parties were respectively entitled to was settled by the decree ; and that question is thereby concluded.

It is objected that the present was not maintainable, as an action of trespass to try title, for the want of an indorsement, to that effect, upon the petition. This objection came too late on a motion in arrest of judgment, even if it were distinctly taken in the motion, which it is not. The objection should have been taken by exception to the petition : but the answer did not bring in question its legal sufficiency. The defendant answered to the merits, denying the title of the plaintiff, and setting up title in himself. The case was tried upon these issues. The plaintiff was well apprised of the object and nature of the suit, as appears by his answers ; and it was too late, after verdict, to raise the objection, that the petition did not apprise him of the nature of the action, because it had not the proper indorsement.

It is evident the plea of the statute of limitations cannot avail the defendant. There is no pretence of any adverse possession, or holding of the land sought to be recovered in this

suit, by the defendant, or any one in privity with him, previous to 1851; and this suit was brought in January, 1853.— The proof is, that none of the heirs. of Shannon took possession, or ever set up any claim adverse to the plaintiff, to the north half of the league, until 1851. They all admitted the plaintiff's right up to that time. That the mere fact that one Burnett, who had purchased from one of them, in 1847, " claimed " an undivided interest in the entire league, cannot avail the defendant as an act of adverse possession, is quite too clear for argument.

In the view we have taken of the case, the rulings of the Court in instructions to the jury, and upon the admissibility and effect of evidence, introduced by the plaintiff to establish a confirmation of the contract, or an equitable title, aside from it, become immaterial, and do not require revision. Upon the whole, we are of opinion that there is no sufficient ground of error assigned for reversing the judgment, and that it be affirmed.

Judgment affirmed.