ISAAC N. MARKS ET AL. v. D. HILL, ADMINISTRATOR, &c.

1. LAND CERTIFICATE—CONSIDERATION FOR.—Emigration and settlement in the State constituted the leading consideration of the grant of headright land certificates ; and where the head of a family died before its issuance, (or, as in this case, before the unconditional certificate had issued,) the certificate, no matter in whose name issued, would inure to the benefit of his estate.

2. SAME—CONSTRUCTION OF STATUTE.—Article 4178, Paschal's Dig., authorized the issuance of the unconditional certificate to the "widow's legal heirs, executors, or administrators," &c.: *Held,* That under this statute, the heirs, executors, and administrators alike stood as representatives of the deceased, and not in their own right.

3. ADMINISTRATION—CLOSE OF, PRESUMED.—An administration was granted in May, 1840, the record showing no extension of time and no action therein until 1851 : *Held,* That the presumption of law is that it was closed.

4. YEAR'S SUPPORT FOR WIDOW AND CHILDREN.—Prior to the probate act of 1848, no law of Texas authorized the setting aside of property at its appraised value for the support of the wife and children.

5. RETROACTIVE LAWS.—The probate act of 1848 did not confer on Probate Courts the right to allow the widow to select property of the estate for a years's allowance, which had not been made at the passage of the law.

6. PROBATE COURTS.—Probate courts have no power to dispose of property of an estate, except as it is conferred by the statutes.

7. SAME—VOID AND VOIDABLE.—An order was made by the Probate Court in 1851, in an administration originally granted May, 1840, and there was no evidence of its extension; personal property was set aside at its appraised value to the widow for a year's allowance for her support and that of her minor children: *Held*, Not merely irregular, but null and void.

APPEAL from Panola.   Tried   below   before   the   Hon. George Lane.

The facts are carefully given in the opinion.

*J. G. Hazlewood* for appellant, cited Bartlett *v.* Cocke, 15 Tex., 478; Poor *v.* Boyce, 12 Tex., 449; Lynch *v.* Baxter, 4 Tex., 445; Finch *v.* Edmonson, 9 Tex., 504; Sydnor *v.* Roberts, 13 Tex., 598; Baker *v.* Coe, 20 Tex., 436; Lee *v.* Kingsbury, 13 Tex., 68; Tadlock *v.* Eccles, 20 Tex., 782; Giddings *v.* Steele, 28 Tex., 733; Paschal's Dig., art. 1260, and notes 462, 488; Sayles's Probate Laws, sec. 77, and note; Green *v.* Crow, 17 Tex., 188; 11 Tex., 249; Wilkinson *v.* Wilkinson, 20 Tex., 242; Babb *v.* Carroll, 21 Tex., 766; Merriweather *v.* Kennard, 41 Tex., 280; Webb *v.* Webb, 15 Tex., 276; Johnson *v.* Newman, 43 Tex., 636; Randon *v.* Barton, 4 Tex., 289.

*A. M. Carter*, for appellees.—The children of Daniel B. Lewis took by purchase and not by descent from Daniel B. Lewis.   The conditional certificate issued under art. 4167, Paschal's Dig.   The patent issued under art. 2186 Hartley's Digest.

The children of Daniel B. Lewis were his only heirs. (Arts. 576 and 577, Hartley's Digest.)   At Daniel B. Lewis's death, there was nothing *in esse*, of which an administrator could take into account, or which could descend to his heirs. (Walters *v.* Jewett, 28 Tex., 192.)   "The persons who have an estate of freehold subject to condition are seized, and may convey or devise the same, or transmit the inheritance to their heirs, though the estate will continue defeasible until the condition be performed, or destroyed, or released, or

barred by the statute of limitations, or by estoppel." (4 Kent, 125.)

Daniel B. Lewis could not convey, (art. 4167, Paschal's Dig.,) nor devise, nor transmit the inheritance to his heirs. In Ohio, in case of a grant to revolutionary officers or their legal representatives, where they are dead, the heirs will take as purchasers. (Thompson v. Gotham, 9 Ohio, 170.)

We think this case will reflect considerable light on the point of purchase. (See also 1 Bl'k Comm., Book 2, 241. A purchase is the method of acquiring an estate otherwise than by descent. (Ib.; also Williamson on Real Property, 96.)

We are strongly of opinion that the administration upon Daniel B. Lewis's estate was null and void. There were no debts due by the estate, and none owing to the estate, (see Mathews's testimony, Withers v. Patterson, 27 Tex., 491,) and nothing to administer upon. (Walters v. Jewett, 28 Tex., 128.)

GOULD, ASSOCIATE JUSTICE.—The appellees, who were the plaintiffs below, claimed the land in controversy by virtue of a conveyance from the children and sole heirs of Daniel B. Lewis. The appellants claimed the same land under the surviving widow of Daniel B. Lewis, and under an order of the County Court, made in the administration of the estate of said Lewis, setting the headright certificate aside to her.

The facts necessary to the proper understanding of the case are as follows: In 1839 Daniel B. Lewis, with his wife and two children, immigrated to Texas. In the same year, his wife died, and he married again. On January 10, 1840, a conditional certificate for 640 acres was issued to him, under the statute entitling him thereto. (Paschal's Dig., art. 4167.) In the spring of same year, he died, and letters of administration were granted in May, 1840, to James L. Mathews, brother of his second wife, Mary Ann. So far as the record shows, his estate consisted of personal property to the amount of $63.75, and the conditional certificate. In August, 1842,

this conditional certificate was located and survey made of 486 acres of land in what was then Harrison county, through whose agency does not appear. This survey, however, was in conflict with another, and was afterwards abandoned. In November, 1849, the unconditional 640 certificate was issued to Daniel B. Lewis, or the heirs of Daniel B. Lewis. The precise form of the certificate does not appear, nor by whose agency it was procured. In February, 1851, Mathews, as administrator, filed his petition, alleging that there remained in his hands the headright certificate of deceased for 640 acres of land, 480 acres of which had been located in Panola county, (cut off from Harrison county in 1846,) Texas. The petition states that he had filed his accounts, prayed for notice to the heirs, naming them, and that the estate be distributed. At the March Term of the County Court this petition was amended by leave of court, so as to show that the property on hand was simply a certificate for 640 acres of land. At the same term, the court made the following order: "Estate of Daniel B. Lewis. It appearing to the court that there never had been any order heretofore setting apart the property for the support and maintenance of the widow and heirs of said estate, and the said widow being willing to take the amount of property contained in the inventory at its appraisement, it is therefore ordered by the court that the same be set apart, to wit, one bed and furniture, valued at $30; one saddle, $5; one gun, $20; pot ware, $2.50; crockery ware, $3.25; one trunk, $3; Daniel B. Lewis's headright certificate, $320; and that the administrator be and is hereby required to hand over the same to said widow, upon paying costs, &c., paid out by him in management of said estate." The order proceeds to recite the examination of the administrator's accounts, and that the entire estate had been set apart to the widow, and finally discharges the administrator. At the time this order was made, the second and surviving wife of Daniel B. Lewis was

living with her third husband, R. G. Stollcop, she having first, after Lewis's death, married one Miller.

In September, 1851, the conditional certificate was surveyed on the land in controversy. In December of the same year, the widow, joined by her then husband, conveyed the certificates, conditional and unconditional, to S. Harris, and after several intermediate conveyances of the certificate and land surveyed thereby, these were conveyed in 1856 to the appellants.

In 1854, the sons of D. B. Lewis conveyed the certificate and the surveys made by virtue thereof to W. K. Elliott and J. E. Anderson, the latter of whom afterwards conveyed to T. S. Anderson, who, with the administrator of Elliott's estate, were the plaintiffs. In 1874, the land in controversy, corresponding in the field-notes with the survey of 1851, was patented to the heirs of D. B. Lewis.

It is contended on the part of appellees, that the unconditional certificate constituted no part of the estate of D. B. Lewis, but that it was the property of his heirs by purchase and not by descent. Such, however, is not our opinion. It is believed that the cotemporaneous construction was, that immigration and settlement in the State was the leading consideration of the grant, and that where the death of the head of the family occurred before the lapse of the three years, during which he was required to remain a citizen of Texas, and where, as in this case, the wife at the time of immigration was previously dead, the unconditional certificate, no matter in whose name it issued, would inure to the benefit of his estate. When the heads of the family both died before the lapse of three years, the right to a certificate under the act of January 4, 1839, was incomplete. (Paschal's Dig., art. 4167.) But subsequent legislation authorized the issuance of the unconditional certificate to the " widows, legal heirs, executors, or administrators of any one entitled to the benefit of this law who died a citizen of the Republic." (Paschal's Dig., art. 4178.) It is believed that

under this statute the heirs, executors, and administrators alike stood as the representatives of the deceased, and not in their own right.    There is nothing in the subsequent act authorizing patents on such unconditional certificates inconsistent with this view.  (Paschal's Dig., art. 4311, and art. 4228*a*.)   The children of D. B. Lewis inherited whatever interest they had in their father's headright certificate, subject to any valid disposition thereof made by his administrator, under the orders of the County Court.   But we are also of the opinion that the order of that Court setting the certificate aside to the surviving widow was unauthorized and void.

After the lapse of over ten years, without any action in the administration of this estate, it may well be held, that the administration was no longer open.   This is not the case of a mere failure to enter an order extending an administration. So far as the record shows, the administrator had not been recognized as such by the court during the long interval of nearly eleven years.   In the absence of some order, showing its existence, we think it would be going beyond any of the former cases, to recognize this as a valid, subsisting administration.    (12 Tex., 449; 15 Tex., 557 and 606; 16 Tex., 413; 18 Tex., 81.)   But, even if the administration were still open, we are of opinion that the order of the court was unauthorized.   Under the laws in force at the time the administration was opened, and under the subsequent statutes, up to the probate law of 1848, the court had no authority to allow the widow to select property, at its appraised value, in payment of an allowance for a year's support of herself and minor children of deceased.   That act of 1848 made it the duty of the chief justice, at the first term of court after the grant of letters, to "fix the amount of an allowance to be made for the support of the widow and minor children, if there be either or any, of the deceased, which allowance shall be of an amount sufficient for their maintenance for one year, and shall be paid by the executor or administrator to the widow,

if there be one; if not, then to the guardian of the child or children, either in money, out of the first funds of the estate that may come to his hands, or in such personal effects of the deceased as such widow or guardian may choose to take at the appraisement, or a part thereof in each, as they may select." (Paschal's Dig., art. 1304.) The County Court had no authority to dispose of the property of an estate, except as it was conferred upon it by the statute. (Withers *v.* Patterson, 27 Tex., 495.) The power of the court to make the order which it did must be found, if at all, in the section of the statute just quoted. We are of opinion that this statute did not have an indefinite, retrospective operation, and did not confer upon the court power to authorize the widow to select property in payment of an allowance never fixed in amount, where the estate had been for a series of years in course of administration under laws which gave no such right, and which, at the time the administration was begun, made no provision even for an allowance. In our opinion, the action of the court was not merely irregular, but was an attempt to dispose of the estate in a manner not authorized by law, and was null and void.

Under the law in force at the death of Daniel B. Lewis, his children were his sole heirs, and became the legal owners of the land which was patented in the name of the heirs of D. B. Lewis. The plaintiffs produced a valid conveyance from these heirs, and were entitled to recover the land.

The judgment is affirmed.

AFFIRMED.