| 49 | 603 |
| 77 | 58 |
| 49 | 603 |
| 80 | 327 |

ELIZABETH DUNCAN ET AL. V. A. J. VEAL.

1. VOID ADMINISTRATION—PRESUMPTION AGAINST DEBTS—JURISDICTION.—A volunteer in the Texas army, from Louisiana, was killed at Goliad, in 1836. In 1838, application for letters of administration were applied for and granted, in Harrisburg county, but letters never issued to the applicant. October 14, 1850, D applied for letters of administration in the same county, but showing no special reason for administration, it not appearing that the deceased had a domicil nor any property in the county. Administration was granted, and a headright land certificate for one-third league was sold. In a suit by a holder under such sale against the heirs of the intestate : *Held—*

1. In the absence of special reason calling for administration at the time, the court had no authority to grant administration.

2. It will be presumed, without clear proof to the contrary, that no debts existed against the estate in 1850, when letters of administration were sought.

3. The county of the death of the intestate had jurisdiction over the estate, in the absence of domicil or of property elsewhere.

4. Costs of an ineffectual effort to obtain letters of administration do not constitute a charge against the estate as a debt, but are chargeable against the applicant.

2. VOID ADMINISTRATION.—See record of which the court say that the administration was evidently not for the benefit of those interested in the estate, but for those to be benefited by the costs of administration, or by purchasing property under sales made by it.

3. Costs as basis for grant of administration.—Neither costs of an ineffectual effort to obtain letters of administration, nor costs accruing in an administration granted, without existence of other debts, will form a basis for an administration.

4. Headright certificate protected from sale as land.— The act of January 14, 1841, (Hart. Dig., 1053, 1054,) prohibiting administration upon estates of "any volunteer from a foreign country who may have fallen in the battles of the Republic,"·and a sale of "lands of such deceased without the consent or approbation of the heirs," applied to the sale of headright land certificates equally as to lands which might have been covered by such certificate.

5. Same—Repeal.—Nor was said act of January 14, 1841, for the protection of the estates of deceased volunteer soldiers, &c., repealed by the repealing clause in the general Probate act of 1846.

Appeal from Burleson. Tried below before the Hon. B. H. Davis, special district judge selected by the parties.

September 16, 1874, W. G. Veal brought, in the ordinary form, his suit of trespass to try title, against W. B. Newcomb, James Reynolds, W. H. Calvin and appellants, the heirs of Thomas K. Pierson, to try the title to about 860 acres of land, situated in Burleson county. On April 17, 1875, appellants, the heirs of Thomas K. Pierson, filed their answer, consisting of a general demurrer, plea of not guilty, and general denial.

March 8, 1878, a trial of the case was had. Veal dismissed his suit as to W. B. Newcomb, James Reynolds, and W. H. Calvin. The case was thereupon submitted to said special judge, on the issue made by the pleadings, upon an agreed state of facts. Judgment was rendered in favor of plaintiff, Veal. Appellants' motion for a new trial being overruled, they appealed to this court.

The case was submitted upon an agreed statement of facts, as follows:

"It is agreed that Thomas K. Pierson was a soldier in the war between Texas and Mexico, in 1836, and was killed in that year, in such service, at Goliad, in Texas, in the service of the Republic of Texas; and if the administration upon his estate, together with proceedings under that administration,

divested his estate of title to the land certificate referred to in those proceedings, then plaintiff has title to the land in suit; but if those proceedings did not divest his estate of title to said certificate, then the defendants, heirs of Thomas K. Pierson, have title.

"The record of said proceedings is hereto attached and made a part of this agreement.

"It is further agreed, that said Thomas K. Pierson volunteered in the service of the Republic of Texas in the city of New Orleans and State of Louisiana, then a country foreign to the Republic of Texas; and he was at the time a citizen of Louisiana. * * *

"There was a deed by the administrator according to the order of court."

The following is an abstract of the record referred to, from Probate Court of Harris county, Texas:

March 24, 1838, Henry S. Pierson filed his petition in the Probate Court of Harrisburg county for letters of administration of estate of Thomas Kinman Pierson, who was killed in Republic of Texas about last of February, 1836, and who had served as captain in the army of the Republic.

May, 1838, in accordance with the petition, H. S. Pierson was appointed administrator.

July 31, 1839, on motion of "C. W. Buckley, counsel for the heirs of the succession," the court ordered that said administrator be discharged, he having failed to give bond. By same order, Henry J. Jewett was appointed administrator *de bonis non.*

August Term, 1839, of said court, the order removing H. S. Pierson and appointing Jewett was rescinded, and citation ordered to H. S. Pierson, returnable to November Term, to report, &c., preparatory to his dismissal.

October 14, 1850, J. De Cordova applied for letters, alleging that Thomas K. Pierson died in Texas several years ago, intestate; that he was a transient person, and had no domicil; that his estate was opened, but not administered; that costs

have accrued and are due; that he has been requested by a creditor to administer, &c.

November Term, 1850, the Probate Court of Harris county made an order appointing J. De Cordova administrator.

Inventory was returned and approved at February Term, 1851. The inventory contains "headright certificate for one-third league, issued by board of land commissioners of Harrisburg county to decedent," appraised at $75, which was the only property of the estate.

The appraisement was made by R. A. Hanks, Henry Leavenhosser, and August C. Daws, and purports to have been sworn to before A. C. Daws, notary public.

February 5, 1851, the oath of the administrator was taken before W. R. Baker, county clerk.

Same day, De Cordova filed his bond as administrator, in sum of $150, with August C. Daws and W. R. Baker sureties. The bond was indorsed, "Signed, sealed, and acknowledged before me. W. R. Baker, clerk."

February Term, 1851, the bond and inventory were approved.

February 25, 1851, De Cordova, as administrator, filed petition representing that the headright one-third league certificate was all the property inventoried; that he has no money to locate it; that it is not likely to appreciate in value; "that costs of court have accrued and are due to amount about fifty dollars"; that he has no means to pay them; asking an order to sell the said certificate, &c.

February Term, 1851, order of sale was made; sale to be on twelve months' credit, &c. (Order regular and full in all respects.)

April 16, 1851, De Cordova, administrator, made return of sale, showing that after giving due notice he had sold the Pierson headright certificate on first Tuesday in April, 1857, and a duplicate therefor, to W. R. Baker, for $40.

Return of sale sworn to before W. R. Baker, clerk.

April Term, 1851, sale approved; and Baker having paid his bid, deed was ordered to be made to him.

November Term, 1851, De Cordova rendered his final account as administrator. Items as follows:

| "Headright certificate | | $40 00 |
|---|---|---|
| By old costs of court | $50 37 | |
| By costs of my administration | 51 10 | |
| By commissions on $40 | 4 00 | |
| By advertising and getting duplicate certificate | 7 50— | 62 56 |
| Balance due administrator | | $22 56 |

December Term, 1851, the final account was approved, and De Cordova finally discharged.

*Smith & Blackburn*, for appellants.

I. The court erred in deciding that the administration taken out by Jacob De Cordova on the estate of Thomas K. Pierson was a valid administration. The transcript of the record of said administration shows that Thomas K. Pierson died in the year 1836, and the petition for the grant of letters to said De Cordova was not filed until the 14th day of October, 1850; the presumption of law was, that at that time there were no debts and no necessity for administration. (Blair *v.* Cisneros, 10 Tex., 46; Wardrup *v.* Jones, 23 Tex., 495.)

II. The transcript of the record of said administration shows that said Thomas K. Pierson had no domicil in this State, and no property in said Harris county; and the proof in evidence in the case shows that said Pierson died at Goliad, Texas. (Paschal's Dig., art. 1260; Hearn *v.* Camp, 18 Tex., 551.)

III. It is evident, from the transcript of the record of said administration, that the administration was taken out in fraud of law, and for the benefit of the administrator and officers of court, and not for the benefit of said estate. (McMahan *v.* Rice, 16 Tex., 335.)

IV. It was in proof that Pierson was killed in the service of the Republic of Texas, and that he was a volunteer from a foreign country. The record failing to show that De Cordova was next of kin, or had authority from the next of kin to administer on said estate, the administration was without authority of law. (Paschal's Dig., art. 1398; Vogelsang *et al.* *v.* Dougherty, 46 Tex., 471, 473.)

V. The court erred in holding the sale by De Cordova, as administrator of the estate of Thomas K. Pierson, deceased, to W. R. Baker, to be a valid sale of the land certificate and land located under it, it being admitted that Pierson was a volunteer from a foreign country, and had been killed in the service of the Republic of Texas, and the record of said administration failing to show that said De Cordova had the consent or approbation of the heirs of said Pierson to such sale, said De Cordova being an administrator *de bonis non* on said estate, and his administration being a continuation of the administration of H. L. Pierson, granted on said estate in 1838. (Paschal's Dig., arts. 1278, 1376, 1399; Harris *v.* Graves, 26 Tex., 580.)

VI. By the terms of the agreement upon which the case was submitted, plaintiff's title was dependent upon the validity of the administration on the estate of Thomas K. Pierson, and the proceeding therein to divest the heirs of said Pierson of title to the land in controversy, and the administration and proceeding therein being invalid, his title was invalid. (Murphy *v.* Menard, 14 Tex., 62, 66; Blair *v.* Cisneros, 19 Tex., 46, 47; Wardrup *v.* Jones, 23 Tex., 494; Boyle *v.* Forbes, 9 Tex., 35; Chandler *v.* Hudson, 11 Tex., 37; Fisk *v.* Norvel, 9 Tex., 13; Hurt *v.* Horton, 12 Tex., 287; Francis *v.* Hall, 13 Tex., 192; Rose *v.* Newman, 26 Tex., 133.)

*J. D. Thomas,* for appellee.

I. The existence of debt is not essential to the jurisdiction to grant administration. (Kleinecke *v.* Woodward, 42 Tex., 311.)

II. The Probate law of 1848, under which administration was granted to De Cordova, is broad enough to authorize administration wherever there is unadministered property of the decedent within the jurisdiction of the court. (Green v. Rugely, 23 Tex., 540.)

III. The jurisdiction to grant administration did not depend on Pierson's domicil in the State; (Green v. Rugely, 23 Tex., 540;) but the record does not show that the intestate had no property in the county of the administration.

IV. It does not appear from the transcript, or from appellants' statement, that the administration was in fraud of the law, or for the benefit of the administrator and officers of the court.

V. In October, 1850, when administration was granted to De Cordova, the law did not require authority to administer on a soldier's estate to be procured from the next of kin, or that the administrator should be the next of kin. (Act 1846, repealing clause, Hart. Dig., 1108; reënactment December 17, 1851, Paschal's Dig., 1400.)

VI. If authority to administer, from the next of kin, was essential, then, in the absence of proof to the contrary, it will be presumed to have been shown to the court before administration was granted. (Pleasants v. Dunkin, 47 Tex., 355; Vogelsang v. Dougherty, 46 Tex., 472; Withers v. Patterson, 27 Tex., 496.)

VII. When De Cordova sold the certificate, April 1, 1851, there was no law requiring him to procure the assent of the heirs of decedent to the sale. (Act 1846, repealing clause, Hart. Dig., 1108.)

VIII. The act of 1841 (Paschal's Dig., 1399) inhibits the sale of land, but not of personal property, without the consent of the heirs. The land certificate was personal property. (Pleasants v. Dunkin, 47 Tex., 355; Cox v. Bray, 28 Tex., 247; Peevy v. Hurt, 32 Tex., 150.)

IX. De Cordova having been appointed administrator in 1850, was not required by law to procure the assent of the

heirs to the sale.    (Paschal's Dig., 1399; Harris v. Graves, 26 Tex., 580.)

X. If necessary to support the jurisdiction of the court, it will, in the absence of proof to the contrary, be presumed that between the time when Thomas K. Pierson volunteered as a soldier, and the time of his death, he became a citizen of Texas.   He is admitted to have been a citizen of Louisiana when he volunteered, but the time is not stated.   He is further shown to have been killed in the service of Texas, at Goliad, in 1836.

XI. It is now too late for appellants to set up the invalidity of the proceedings in probate.    The land certificate was sold April 1, 1851.    It was sold because the estate had no money to locate it or to pay costs.   The petition alleges title and possession in appellee January 1, 1872, and that appellants on that day entered and ejected him.   (Kleinecke v. Woodward, 42 Tex., 311; Vogelsang v. Dougherty, 46 Tex., 472.)

XII. When a Probate Court has made the regular and usual orders through the entire administration of an estate, then, in a collateral proceeding, every fact essential to its jurisdiction will be presumed, unless the contrary is clearly proved.   (Pleasants v. Dunkin, 47 Tex., 355; Vogelsang v. Dougherty, 46 Tex., 472; Withers v. Patterson, 27 Tex., 496.)

MOORE, ASSOCIATE JUSTICE.—The transcript in this case exhibits several errors, for which this judgment must be reversed.

In the absence of an averment and proof of some special necessity for the grant of letters of administration upon the estate of Thomas K. Pierson, it must be presumed that there was no occasion for it at the date of De Cordova's application for the appointment of administrator of his estate.    Without clear proof to the contrary, it should be presumed that there were no debts due by or to said intestate, or necessity for an administration upon his estate after the lapse of so great a length of time from his death.    The absence of existing debts

against the deceased, in this instance, however, does not depend upon mere presumption: the record of the pretended administration demonstrates that there was no valid and subsisting debt against said Pierson at the date of the administration; nor were any shown to be due to him. The only pretense of such debts is the cost which had been incurred by one Henry L. Pierson in a futile effort to take out letters of administration upon the estate of Thomas K. Pierson in the year 1838, over ten years prior to De Cordova's application, which, however, was abandoned before letters of administration were actually issued to him. The costs incurred in this abandoned effort to administer upon the estate were, unquestionably, justly chargeable to the party by whom they were incurred, and not against the deceased or his property. (Marks *v.* Hill, 46 Tex., 345, and cases cited.)

It is too plain to require argument to demonstrate, that De Cordova administered upon the estate, not for the benefit of those in any way interested in it, but of those to be benefited by the costs to be thereby incurred, or who wished to profit by the sale of the certificate belonging to the decedent. The time and circumstances under which the pretended letters were granted, render it obvious, that although nominally he obtained letters of administration on the estate of a deceased volunteer soldier of the Republic, he in fact administered upon that of his heirs; and, under the guise and pretense of administration, he attempted to sell and transfer to the principal beneficiary of the pretended administration property of the heirs with which neither he nor his confederates had any right to intermeddle.

But if the administration had not been wholly unwarranted by reason of the lapse of time between the death of Thomas K. Pierson and the issuance of the letters of administration, his estate should have been administered upon in Goliad county, where he died, and not in Harris, where it is plain he had neither domicil nor property at the date of his

death, or at any time prior thereto.   (Paschal's Dig., art. 1260.)

But even if the estate of the decedent had been subject to administration in Harris county at the date of De Cordova's appointment and qualification, the grant of letters of administration to him, the order of sale, and the sale of the certificate under which the land in controversy in this case is held, were all in plain violation of the act of January 14, 1841, entitled "An act to protect the rights of the heirs and next of kin to the members of the Georgia battalion, and other volunteers from foreign countries, who have fallen in the battles of the Republic, or otherwise died in the limits of the same."

There is no pretense that the requirements of this statute were complied with in the grant of the letters of administration to De Cordova, or in ordering the sale of the certificate to which the estate of Thomas K. Pierson was entitled.

It is claimed, however, that the omission to do so does not affect the title acquired by the purchaser from the administrator.   First: Because the certificate was personalty, and therefore not, as appellee maintains, within the statute; but, unquestionably, it is within its spirit and meaning.   It was the purpose of this statute to protect the estates of deceased soldiers from just such sales as this; and it would be a narrow and technical construction of it to allow their estates to be stripped of the property given them by the Republic, and which, it may be inferred, was all they had which an administration could reach, and therefore just that which must have been in the mind of the Legislature, because of a technical distinction between land and a certificate for, or a right to acquire, land.   It was land that was promised to those who should volunteer as soldiers for the defense of the country, and it was just such certificates as this which were given them in fulfillment of this pledge. It would be plainly in violation of the spirit and purpose of the law forbidding the sale of land belonging to the heirs of

deceased soldiers, if until its location, the certificate by which the land promised therein by the government could alone be obtained, could be sold without the consent of the heirs. Second: It is insisted that this act forbidding such administrations was repealed by the act to organize Probate Courts, approved May 11, 1846; but, evidently, to hold the act of January 14, 1841, enacted for the special purpose of protecting the estates of volunteer soldiers from foreign countries who had fallen in battle or otherwise died in the Republic, repealed by the repealing clause of this general act of 1846 organizing Probate Courts, would do violence to the well-established canons for the construction of special and general laws, and their proper relation and bearing to each other.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.