SILAS HERRINGTON V. SYLVESTER WILLIAMS ET AL.

The plaintiff has the right to make all persons interested in the subject-matter of the suit parties, whether they be residents or non-residents. But where one of the defendants, as administrator and heir, had conveyed all his interest in the land and set up no claim to it, he was improperly joined as a defendant.

And if the object was to call upon him to avouch and make good the title sold, or else to answer for the purchase-money received by him as administrator, then the mere publication against him was no sufficient service.

No personal judgment can be rendered against a non-resident without actual personal service of the citation or writ upon the party. In order to acquire jurisdiction through the property, where the party is non-resident or absent from the state, there are certain essential prerequisites prescribed by statute to be performed before the jurisdiction actually attaches, so as to authorize an adjudication of the court upon the rights of parties. There must be an affidavit made, bond and security given to the absent party, the impetration of the writ of attachment, and its actual levy and return by the ministerial officer of the court, before the jurisdiction attaches in a proceeding *in rem.*

Where none of these requirements had been complied with, no valid judgment could have been rendered either against the land or the person of the administrator and heir. He was in no proper sense a party to the litigation, actually or constructively.

Where B. was in possession of the land sued for, holding under deed, but the legal title was in W., who resided in a different county, the suit was properly brought in the county where the land was situated, and the plaintiff had the right to join W., so as to obtain specific performance against him should he recover against B. And where W. disclaimed all interest and expressed his willingness to convey to whomsoever the best equity belonged, the sufficiency of the service becomes an unimportant matter.

An equitable claimant to land who is not in possession has no right to invoke the aid of a court of equity to quiet his title and remove the cloud cast over it by other claimants.

To authorize a bill *quia timet,* or a bill of peace, the party must not only hold the legal title, but he must be in actual possession of the land or some part of it, and have some reasonable grounds of the apprehension of the disturbance of that right and of that possession by other parties.

There is no doubt a person in possession, holding the legal title, may be entitled to a decree for the release of all mere equitable titles set up by adversary claimants. The reason is, that equity, acting upon the maxim, it must follow the law wherever conscience is not violated, will not deprive

Syllabus.

an innocent purchaser of any legal advantage which he may have obtained in the business and negotiations of life.

Although our system authorizes the blending of the principles of law and of equity in administrative justice, it neither requires nor sanctions the blending of various and contradictory rights and causes of action in the same suit.

Since the adoption of the registry acts of the state, a junior's equity in land, acquired by purchase for a valuable consideration without notice, actual or constructive, may be used offensively to evict a tenant in possession under a prior equity. For, although a party plaintiff in an action of trespass to try title is required to recover upon the strength of his own title, yet it may be the strength of an equitable as well as of a legal title.

Where an equitable title had been recorded in the county of F., in which the land was situated, but it was afterwards cut off into the county of C., the record was notice to a subsequent purchaser at administrator's sale.

Purchasers at sheriffs' sales are charged with notice of recorded equitable covenants to convey by the defendants in execution.

It is matter of very grave doubt whether the probate court, which derives all its authority from the statutes, is vested with power to order the sale of an equity, which is a mere chose in action. The statutes provide that the probate court may order the sale of property belonging to the estate for the payment of debts. And the administrator may enforce by suit the claims of the estate to property, and recover possession of it. And certainly a mere title bond has to be enforced by the courts of the country, unless the obligor chooses voluntarily to discharge such an obligation. It may be well doubted, therefore, whether such an equity is the subject of sale under an order of the probate court.

An equitable claimant may give notice of his title by registration. (Paschal's Dig., 4989.) But this creates no new rule of litigation between mere equitable claimants.

"Where the purchase is of a mere equity, which owes its existence to a court of chancery, and cannot be enforced without its assistance, all reasons for departing from the general maxim, no one can transfer to another a greater or more right than he has, is at an end; and the right acquired by a vendee under the sale is necessarily limited to that of the vendor. In other words, equity deals with the purchaser of an equitable title as the law deals with the purchaser of a legal title, and regards the purchase as incapable of either defeating rights or creating them. When, therefore, a purchaser buys an equitable estate with a knowledge of its real character, and without obtaining the legal title, he can found no claim on the mere fact of the purchase, and must stand or fall by the title of the vendor." In this condition is the purchaser at the administrator's sale in this case. He purchased, to say the most of it, an equitable title, and took it subject to all existing equities.

The intestate of the administrator had passed the equitable title out of himself for at least two hundred acres of the land, and, whether it had descended

xxxi—29

by a regular transmission to the tenant in possession or not, it was sufficient for him as a shield of defense to his possession, to show upon the trial that the prior and better equity had passed out of the intestate in his lifetime, and was lodged elsewhere than in the keeping of the purchaser at the administrator's sale.

In an action of trespass to try title an equitable title may be wielded as a weapon of defense as well as of offense.

APPEAL from Collin. The case was tried before Hon. W. T. G. WEAVER, one of the district judges.

The facts are sufficiently set forth in the opinion of the court.

*John C. Easton,* for the appellant.—I. The paragraph in the charge that "a purchaser at an administrator's sale acquires no title to land unless the administrator by order of the probate court executes and delivers to such purchaser a deed in conformity with law—a mere sale purchase, and decree of confirmation—does not vest title in the purchaser," seems so repugnant to the well-settled principles of law, that there is but little occasion of referring to authorities. The acts recited in the charge are in fact the only things that do confer upon a purchaser at such sales a title, "where the jurisdiction of the court has been rightfully called into exercise and the order is valid." I respectfully refer the court to Withers v. Patterson, 27 Tex., 491, to show the fallacy of this portion of the charge.

Justice BELL said, in Flanagan v. Pierce, 27 Tex., 79 : "Ordinarily a purchaser at administrator's sale will be protected if there be an order of sale, a sale in compliance with the order, and a subsequent confirmation by the court." If these matters can be by any means considered "erroneous," they have been cured by the action of the probate court of Milam county, and do not in any way affect the title of the appellant, and cannot in this action be inquired into collaterally, as is fully shown by the case already cited in Brown v. Christie, 27 Tex., 73, and Rock v. Heald, 27 Tex., 523.

II. The next section of the charge is no doubt intended to explain to the jury that principle of law known to courts and to the legal profession as the doctrine of *caveat emptor*.

This rule or maxim of the law was fully discussed in the case of Love v. Berry, 22 Tex., 371. (2 Eq. Lead. Cas., Part I, note p. 76, and the authorities there cited.)

III. I am satisfied, from an examination of the decisions of our own Supreme Court, that they have placed judicial sales, or sales like the one now under consideration, on an equal footing with all others. (Poor v. Boyce, 12 Tex., 440; Alexander v. Maverick, 18 Tex., 179; Walton v. Reager, 20 Tex., 109.) Purchasers at probate sales are protected as innocent purchasers, and they are not affected by any fraud or unregistered deed, to which they are not parties and of which they had no notice. (Barnes v. Hardeman, 15 Tex., 366; George v. Watson, 19 Tex., 354.)

IV. Constructive notice "is said to be that which puts the party upon an inquiry, and would lead to a knowledge of the requisite fact by the exercise of ordinary diligence and understanding. But vague and indeterminate rumor or suspicion, however strong, is quite too loose and inconvenient in practice to be admitted to be sufficient." (Wethered v. Boon, 17 Tex., 150; Boon v. Weathered, 23 Tex., 676.)

V. The third error consists in the rulings of the court below in excluding the deed made by the administrator of Emmons to Alfred Harrington, and improperly charging upon the effect of the "order, report, and confirmation of sale" from the probate court of Milam county. The authorities already cited—Flanagan v. Pierce, 27 Tex., 79; Barnes v. Christie, 27 Tex., 73; and Rock v. Heald, 27 Tex., 352—are sufficient to show the fallacy of this position.

VI. The evidence offered by Brummitt is believed to have been improperly admitted. It has been well settled by this court, that a valid judgment, a valid execution, and a valid sale under it, were all necessary to support a title

thus acquired; and I respectfully suggest that the evidence excepted to falls far short of this fixed standard, and should have been excluded.

*Moore & Green,* for appellees.—I. The first inquiry which presents itself is, does the doctrine of innocent purchaser in any manner apply to a judicial sale of the estates of deceased persons?

It would seem that this question has been ruled upon by our own Supreme Court.

In Crayton v. Munger, 9 Tex., 285, the court held, that the rule of *caveat emptor* applied to such sales; and in Walton v. Reager, 20 Tex., 109, the court said: "It is well settled that, in an administrator's sale, the rule obtains which is embraced in the phrase *caveat emptor,*" referring to the former decisions of the court. And in the case of Love v. Berry, 22 Tex., 378, the court said: "It is true that a purchaser at administrator's sale purchases at his own risk, and only takes such title as the estate has, but he takes all the title the estate has." (See also on this question, Jackson v. Post, 9 Cow., 120; Ashe v. Livingston, 2 Bay, 80; Rogers v. Gibson, 4 Yeates, 111; Freeman v. Hill, 1 D. & B. Eq., 389; 2 D. & B. Eq., 395; Bank of South Carolina v. Campbell, 2 Rich., 179; Williams v. Hollingsworth, Strob., 103; Hancock v. Beverly's Heirs, 6 B. Monr., 531; Bradsaw v. Thomas, 7 Yerg., 499.)

II. The estate of Calvin B. Emmons never having had anything more than the equitable title to the land, the purchaser took it subject to all outstanding equities and unrecorded conveyances which the intestate may have created or executed.

Upon this proposition there seems to be no dissent. It is this doctrine to which Justice BELL referred in the case of Love v. Berry, 22 Tex., 378, above cited; in fact the decision in that case was in strict conformity therewith. In that case the legal title was in the estate, and the contest

was made under an unrecorded equity, of which the purchaser in possession had no notice; and it could be said of the equity set up, as is remarked in 2 White & Tudor's Leading Cases in Equity, 63, first column, "the vendor had apparently a good title in itself," and "that the title was a seizin in fee;" hence in that case he allowed the plea, remarking, at the same time, that it was true that the purchaser at an administrator's sale purchases at his own risk, and only takes such title as the estate has, "but he takes all the title the estate has." (Blankenship v. Douglass, 26 Tex., 225; York v. McNutt, 16 Tex., 16. See also, to the same point W. & T. Lead. Cas., 39; Vattier v. Hinde, 7 Pet., 252; Boone v. Chiles, 10 Pet., 177; Shirras *et al.* v. Craig & Mitchell, 7 Cranch, 34; 2 Con., 409; 2 D. & B., 395; 3 Ired. Eq., 117; Pinson v. Harkins & Ivey, 3 Yerg., 302; Craig v. Leiper, 2 Yerg., 193.)

III. How shall the question be brought up?

The title acquired by such means is termed "the plea of innocent purchaser," and is so treated in all the books. It is a defense only, and is not allowed as a sword to attack the title of another in possession.

In Strode v. Blackburne, 3 Vesey, Jr., marginal page 225, Lord Chancellor ROSSLYN, following the case of Burlace v. Cooke, Freeman's Chancery Cases, 24, decided by Lord NOTTINGHAM, remarked: "That the plea of innocent purchaser for a valuable consideration without notice is a shield to the possession, and I find it very difficult to imagine a case in which it can be used for any other purpose than to defend the actual possession." To the same point are the cases cited heretofore from North and South Carolina; and in Martin & Yerger, 328, it is said: "It is certainly true, as a general rule, that the plea of purchaser for a valuable consideration without notice is a defense to be relied on for the protection of a person in possession against the claim of another not in possession; or, in the language of some of the cases, as a shield to protect one's own possession, but

not as a sword to attack that of others. That there is no possible case in which one out of possession can rely upon this doctrine as a means of getting in we will not assert; we are convinced that such instances are of rare occurrence." (See remarks and cases collected in 2 White & Tudor's Leading Cases, 59; also Snelgrove v. Snelgrove, 4 DeS., 274.)

And we find that, so far as the facts of the cases presented would warrant, the Supreme Court of this state has applied the same rules in regard to this plea as is maintained in England and in the other states of the Union. (York v. McNutt, 16 Tex., 16; Watkins v. Edwards, 23 Tex., 447; Blankenship v. Douglass, 26 Tex., 225.)

In this case the bill shows, as before stated, that the plaintiff bought only an equitable title, and in this proceeding he seeks to obtain the legal title. The bill also shows the fact to be so, that the muniments of title upon which he depended were never in the possession of the vendor; that is, the assignment of the certificate and bond for the conveyance of the land, when located, from Sylvester Williams to Calvin B. Emmons, was never in the possession of the administrator, thus stamping the transaction as *mala fides;* at least it strips the purchaser of the good faith necessary to create a title as against a prior conveyance or equity. In the case of Vattier v. Hinde, 7 Pet., 252, which was a purchase under an execution against a party who had no documentary title, the purchaser was not protected.

LINDSAY, J.—The controversy in this case arises out of the conflicting equities of the parties to the same land, derived from the same source.

On the 7th day of February, 1844, the defendant, Sylvester Williams, for a valuable consideration, sold, transferred, and delivered to C. B. Emmons a certificate for one-third of a league of land, issued by the board of land commissioners of Red River county, given on the 1st day of March,

1838, as his headright, and authorized him to locate it in any part of the republic, and call on the proper officer for the title. This sale and transfer were made in a separate instrument in writing, in which it was stipulated, if the grant or deed did not or could not issue to C. B. Emmons, the assignee, then the said Williams bound himself in a penalty to make to him, or his assigns, a deed of general warranty when the grant did issue, and authorizing him to take full possession of the land as soon as it was located. This transfer and assignment, upon proof of the subscribing witness, was duly recorded in Fannin county on the 23d day of August, 1844, of which county Collin county, where the land lies, then formed a part. By virtue of the certificate, the land was located by survey in what was then Fannin county on the 10th day of May, 1844, and was patented to Sylvester Williams on the 18th day of February, 1845. The legal title has never passed out of Sylvester Williams, with whom it still remains. But, acting upon the authority of the transfer or assignment, C. B. Emmons took possession of the land, or at least claimed and exercised ownership over it, by selling and conveying to John Roberts and Oliver Adams two hundred acres of the land, for a valuable consideration, by deed bearing date the 26th day of April, 1845, and by several *mesne* conveyances it has passed to Harrison Brummitt, one of the appellees, and one of the defendants in the court below. C. B. Emmons having died in the county of Milam, J. B. Emmons was appointed his administrator; and at the March term of the county court of Milam county, 1855, the administrator applied to the court for an order to sell lands of the estate in Collin county to pay the debts of the estate. The court made an order, authorizing him to sell a tract of seven hundred and forty-five acres, a tract of three hundred and thirty-one acres, and a tract of two hundred acres, granted to Sylvester Williams, and lying in the county of Collin. The sale of the two tracts—the seven hundred and

forty-five and the two hundred acre tracts—was made by the administrator, J. B. Emmons, on the 1st day of May, 1855, and the appellant, or the intestate of the appellant, became the purchaser of these tracts of land.

Upon this state of facts the purchaser at the administrator's sale brought suit against H. Brummitt, the tenant in possession of the two hundred acre tract, and against S. Williams, in whom the legal title to all three of the tracts still remained, and against J. B. Emmons, the administrator and only heir-at-law of C. B. Emmons, deceased, seeking a recovery of the possession of the two hundred acre tract from H. Brummitt, a conveyance of the legal title from Sylvester Williams, and, in the event of his failure of success against Brummitt and Williams, a recovery, by attachment, of the lands of the intestate, C. B. Emmons, of the purchase-money paid by him to the administrator and heir-at-law, who had become non-resident since the sale under the decretal order of the probate court. Upon the above state of facts, which are thus substantially presented, though as succinctly as could be done, a verdict and judgment were rendered in the court below in favor of the defendants.

· In reviewing the case here a difficulty suggests itself at once with reference to the condition of the parties to the suit. The right of action of the plaintiff against all persons interested in the subject-matter of the suit undoubtedly existed to enforce his claim, if valid, against all adverse claimants, whether resident or non-resident, and upon the principles of equity all might be made parties defendant. But the defendant, J. B. Emmons, the administrator, according to the statements of the petition, set up no claim to the property; but, on the contrary, he had conveyed to the plaintiff all the right and title which he had to it, whether as administrator or as heir-at-law of his deceased ancestor, C. B. Emmons. The only purpose or object, then, in making him a party at all must have been

to get an alternative judgment against him for the amount of the purchase-money paid to him as such administrator, upon his failure to demonstrate his superior right to the land against the adverse claimants. For such a purpose the record clearly evinces that the court had no jurisdiction. This was really a substantive and independent claim against the administrator and heir; and by bringing him before the court he could not amend the title which he had attempted to convey to the plaintiff, nor could the court amend it for him by making him a party. He was therefore not a necessary party to the suit to try the title, upon the strength of which, legal or equitable, the plaintiff was bound to recover, if he recovered at all. If the purpose was to assert his claim for damages, the purchase-money, and interest, as if upon eviction, the defendant, J. B. Emmons, was no party in such a sense as to give the court jurisdiction to try an issue between him and the plaintiff. From the alternative prayer in the petition, which alleged the non-residence of the administrator and heir and the existence of property belonging to him within the jurisdiction of the court, it is apparent that this could only be a a proceeding *in rem*, and the jurisdiction was sought to be made to attach to the property and not to the person, as no personal judgment can be rendered against a non-resident without actual personal service of the citation or writ upon the party.

In order to acquire jurisdiction through the property, where the party is non-resident or absent from the state, there are certain essential prerequisites, prescribed by statute, to be performed before the jurisdiction actually attaches, so as to authorize an adjudication of the court upon the rights of parties. There must be an affidavit made, bond and security given to the absent party, the impetration of the writ of attachment, and its actual levy and return by the ministerial officer of the court, before the jurisdiction attaches in a proceeding *in rem*.

None of these requirements have been met in this case, and no valid judgment could have been rendered by the court, either against the land or the person of the administrator and heir. He was in no proper sense a party to this litigation, either actually or constructively. In the attitude of the case presented by the transcript, the court could pronounce no judgment against him.

A question is made of the sufficiency of the citation upon Sylvester Williams to give the court jurisdiction over him. It is alleged that he was a citizen of the county of Fannin, and could not be sued in the county of Collin, and that his consent could not confer jurisdiction upon the court. This would certainly be true in some classes of cases, if he were the sole defendant. The court had jurisdiction of the subject-matter, for the land in controversy was situated in the county of Collin, and the suit was instituted for the recovery of land. In such cases the statute makes the action local. If the principle in equity be correct, that the complainant may make all persons parties defendant who are interested in the subject-matter of the suit, it needed not the assent of S. Williams to give jurisdiction to the court; but the plaintiff could make him a party *in invitum*, because, holding, as he did, the legal title to the land in the contestation between the equities of Brummitt and the plaintiff, the first acquired by derivation under a purchase from the intestate in his lifetime, the second by purchase at the administrator's sale after his death, it was necessary to each of the contestants that in some way he should become a party to the litigation, in order to the perfecting of the legal title of either to the land in controversy. Having, in effect, made himself a voluntary party by the writing introduced and proved, in which he assented to the suit, disclaimed all right adverse to the other parties, and avowed his readiness to make title to either, as the court might decree, it virtually dispensed with the necessity for the technical service of process to make him a party,

although that instrument in writing was executed and delivered to the plaintiff before the institution of the suit. It was equivalent to an authority to enter his appearance whenever the suit should be brought. That instrument is in the nature of a bill of interpleader in equity. It possessed the essential elements of such a bill. It claimed no rights in opposition to the rights of the contesting parties, but announced to the court that this party at least stood indifferent in the *lis mota*, and was ready to obey any decree which the court might pronounce in the cause. One of the contending parties claimed to hold the legal title under the administrator's sale; the other, the tenant in possession, sought to protect that possession by a better equity. He professed to have no interest in the subject, having parted with the equitable title; and he desired only that the court should settle to whom the legal title should be made, and he was ready to execute and deliver it accordingly. It substantially contained all the requisites of a bill of interpleader in equity; and, though technically not such a bill, it was in the nature of such a one, and supersedes the necessity of a legal scrutiny of the sheriff's return upon the citation to this party.

Having disposed of these preliminary matters as affecting questions of practice and of jurisdiction, we come now. to the merits of the controversy, the nature and character of the supposed rights of the chief litigants, Herrington and Brummitt. And the inquiry in regard to them may be circumscribed in the main to an investigation of the two following interrogative propositions:

1. Can any equitable claimant of land, who is not in possession, invoke the aid of a court to quiet his title and remove the cloud cast over it by other claimants?

2. Can a party out of possession evict a tenant in possession under a prior equity, by setting up a junior equity acquired by purchase for a valuable consideration without notice?

The petition was no doubt based upon the assumption that the plaintiff had acquired a legal title to the land by virtue of his purchase at the administrator's sale and the execution and delivery of the deed by his vendor, and that there were outstanding or pretended claims to the land which might subject him to future litigation, and relying upon the doctrine of public policy—*interest respublicæ ut sit finis litium*—which pervades the jurisprudence of ours as well as almost all other civilized countries, conceived that he had a right thus to appeal to the court to remove the cloud from his title, and thereby prevent a multiplicity of suits. We do not think, however, that the facts of this case bring him within the purview of that equitable doctrine. To authorize a bill *quia timet*, or a bill of peace, the party must not only hold the legal title, but he must be in actual possession of the land or some part of it, and have some reasonable grounds of apprehension of the disturbance of that right and of that possession by other parties. In this case there is no allegation of the possession of the subject of the litigation or of any part of it. On the contrary, the petition admits the possession of a part by one of the defendants, Brummitt, and the occupation of the residue by persons not known residing upon the land. There is no doubt that a person in possession, holding the legal title, may be entitled to a decree for the release of all mere equitable titles set up by adversary claimants. The reason is, that equity, acting upon the maxim, it must follow the law wherever conscience is not violated, will not deprive an innocent purchaser of any legal advantage which he may have obtained in the business and negotiations of life. Such advantage is nothing more than the just prize and reward of diligence. But we know of no principle which will warrant a decree in favor of a party who may hold the legal title, but is out of possession. Although our system authorizes the blending of the principles of law and of equity in administrative justice,

it neither requires nor sanctions the blending of various and contradictory rights and causes of action in the same suit.   If it were so, the landmarks of all right and justice would soon be entirely obliterated.   We think the plaintiff, unless he had been in possession, was not authorized to seek the aid of a court to remove a cloud from his alleged title thrown over it by the assertion of the adversary claims of others.

Since the adoption of the registry acts of the state, a junior equity in land, acquired by purchase for a valuable consideration without notice, actual or constructive, may be used offensively to evict a tenant in possession under a prior equity.   For, although a party plaintiff in an action of trespass to try title is required to recover upon the strength of his own title, yet it may be the strength of an equitable as well as of a legal title.  This is an instance of what is called the blended jurisdiction in our system, differing essentially in remedy from the common-law system.   If the prior equitable right is duly registered, as required by law, it matures it into the stronger title in this mode of action, and the subsequent purchaser for value is shorn of all remedy, so far as the land is concerned.

The question arises, was the written contract between Sylvester Williams and C. B. Emmons, the intestate of the administrator, J. B. Emmons, so registered as to operate a constructive notice to all subsequent purchasers?   The instrument in writing was executed on the 27th day of February, 1844, and on the 23d day of August, 1844, was proved up by a subscribing witness and admitted to record on that day in the county of Fannin, within whose boundaries the land was then situated.   This was then a literal compliance with the registry laws of the state.   Subsequently, about the 3d of April, 1846, the county of Collin was erected and established out of a part of the county of Fannin, and this land was embraced within its limits, where this suit was instituted.   In legal verity it could have had

no more force or effect, if it had been originally or subse-quently recorded in the county of Collin, to make it ope-rate as constructive notice to all the world. If the prin-ciple, then, of *caveat emptor* applies to judicial sales, the purchaser at the administrator's sale, in this case, was as much bound to take notice of the registry in Fannin county as any other subsequent purchaser directly from C. B. Em-mons in his lifetime. Sales made under execution certainly stand on a somewhat different footing from sales made by administrators under decretal orders of the probate court.

In execution sales, as argued by the counsel for the ap-pellees and as shown by the authorities referred to in this brief, the sheriff is considered in law as the agent or attor-ney of the defendant, to whose use the proceeds of the sale are applied; and the defendant, and those claiming under him, will not be permitted to controvert such title. But the sheriff, in that case, only sells such title as the defend-ant has; and if the defendant has previously alienated, and the deed of alienation to some third person has been duly registered, the court would not protect one who buys at such sale as an innocent purchaser without notice for a valuable consideration. To such purchaser the rule of *caveat emptor* would certainly apply. But courts will pro-tect such execution purchasers without notice against an unregistered deed. At most, the purchaser at the admin-istrator's sale, in this case, could only purchase an equity, because the intestate only had an equitable title to the land at any time. And his personal representative could only sell; and the probate court could only order a sale of such interest as the intestate had, which was but an equity. And it is matter of very grave doubt whether the probate court, which derives all its authority from the statutes, is vested with power to order the sale of an equity, which is a mere chose in action. The statutes provide that the probate court may order the sale of property belonging to the estate for the payment of debts. And the administrator

may enforce by suit the claims of the estate to property, and recover possession of it. And certainly a mere title bond has to be enforced by the courts of the country, unless the obligor chooses voluntarily to discharge such an obligation. It may be well doubted, therefore, whether such an equity is the subject of sale under an order of the probate court. But admitting even that the probate court has the legal power to order the sale of an equity, the purchaser at an administrator's sale, upon an order thus made, could only acquire an equity by his purchase; for he could not take more than was sold under the order.

By article 4989, Paschal's Digest, the statute has provided, that an equitable claimant may give notice by registration of the existence of his claim. But this most obviously was intended, if such registration of the equitable claim was made, it should prevail even against the legal title of a subsequent purchaser for a valuable consideration. It could never have been intended to inaugurate a new species of warfare among mere equities. In 2 White & Tudor's Leading Cases, 63, to which the learned counsel have referred us in their brief, the doctrine is laid down with much clearness and force, that "where the purchase is of a mere equity, which owes its existence to a court of chancery, and cannot be enforced without its assistance, all reasons for departing from the general maxim, no one can transfer to another a greater or more right than he has, is at an end, and the right acquired by a vendee under the sale is necessarily limited to that of the vendor. In other words, equity deals with the purchaser of an equitable title as the law deals with the purchaser of a legal title, and regards the purchase as incapable of either defeating rights or creating them. When, therefore, a purchaser buys an equitable estate, with a knowledge of its real character, and without obtaining the legal title, he can found no claim on the mere fact of the purchase, and must stand or fall by the title of the vendor." In this

condition is the purchaser at the administrator's sale in this case. He purchased, to say the most of it, but an equitable title, and took it subject to all existing equities. The intestate of the administrator had passed the equitable title out of himself for at least two hundred acres of the land, and, whether it had descended by a regular transmission to the tenant in possession or not, it was sufficient for him, as a shield of defense to his possession, to show upon the trial that the prior and better equity had passed out of the intestate in his lifetime, and was lodged elsewhere than in the keeping of the purchaser at the administrator's sale. In an action of trespass to try title an equitable title may be wielded as a weapon of defense as well as of offense. From the facts disclosed by the record in this case, it was so used, successfully and rightfully, on the trial in the court below. It being admitted in the petition that a similar equity exists in reference to the residue of the land, a further prosecution against other parties would eventuate in a like result. With the view here taken of the entire case, it is needless to go into the question of the validity of the administrator's sale, and the right to impeach it collaterally, "by showing from the record itself the want of power in the court to make or render the order in question." We think the whole case rests upon the superior prior equity of the party in possession, which, if it be not in himself, may be shown by him to be outstanding and existing in another, and will be sufficient to resist and defeat an eviction. Wherefore the judgment is

AFFIRMED.