## Ann T. Chinn v. J. W. Taylor.

### (Case No. 5468.)

1. ADMINISTRATOR'S SALE — STATUTE CONSTRUED.— Under the act of 1841 of the republic of Texas (Pasch. Dig., arts. 1398, 1399), no administration could be granted on the estate of a volunteer soldier from any foreign country, who had fallen in any battle of the republic, or who had died within the limits of Texas, except to the next of kin to such soldier, or to some one authorized by the heirs or next of kin; and if administration had been granted prior to the passage of that act, no administrator's sale could be made of the lands of the estate without the consent of such heirs.

2. EVIDENCE — DEPOSITION.— A witness who, in answer to a general interrogatory, which requires him to state "any other matter which would benefit either party to the suit," cannot refer to his former answer to some preceding question, and then amplify that answer by stating matters neither responsive to the question formerly put, or to which he was directed by anything contained in such general interrogatory.

3. SAME — PRACTICE.— Objections being sustained to such an answer by deposition, the plaintiff, who had propounded the question and offered the deposition, took a non-suit, and filed his motion for new trial. The excluded evidence went to the merits of the case, and its exclusion was on a point of practice about which counsel might well have been deceived as to the law. *Held:*

    (1) A new trial may be granted on the ground of surprise, even when the surprise may have been occasioned by a correct ruling of the court, and resulted from the attorney's negligence, if the party asking it has a meritorious cause of action, and injustice would result from its refusal.

    (2) When the excluded evidence showed, in connection with the entire case, that the plaintiff was entitled to recover if his evidence had been properly before the court, and after taking a non-suit he was retained on defendant's plea in reconvention and a judgment rendered against him, the refusal to grant a new trial was error for which, on appeal, the judgment was reversed.

4. NOTICE — PATENT — ADMINISTRATION.— Purchasers of land held under a patent, which on its face recites that it was issued by virtue of a location and survey of a donation warrant, which was itself issued by the adjutant-general of the republic in consideration of the party named having fallen with Fannin at Goliad, are affected with notice of the fact that jurisdiction could not attach in a probate court to order the sale of the certificate, after 1841, unless the heirs or next of kin to the deceased consented to the appointment of the administrator, who was a stranger not of the blood, under whom the certificate was sold; or if the administration had been granted prior to the act of 1841, then not unless the heirs consented to such sale.

5. REMOVING CLOUD FROM TITLE.— To entitle one to recover who asks cloud to be removed from his title, he must show that he has the paramount legal title.

APPEAL from La Salle. Tried below before the Hon. D. P. Marr. Appellants brought this suit in trespass to try title as well as for damages, and claimed judgment to recover of appellees survey No.

514, containing six hundred and forty acres, in La Salle county, Texas, originally granted and patented to the heirs of B. W. Toliver. Appellees filed pleas of not guilty and also in reconvention that appellants' claim was a cloud on the title of appellees to the land,— prayed that the same be removed and that they be quieted in their possession and title. Both parties claimed to deraign title through B. W. Toliver as a common source.

Appellants claimed through a donation certificate issued by the adjutant-general of Texas, June 4, 1851, to the heirs of B. W. Toliver, and a patent issued thereon to the heirs of said Toliver, these appellants, October 16, 1851; the patent reciting that it was issued to said heirs in consideration of said Toliver having fallen with Fannin at Goliad in 1836.

The appellees claimed under an administrator's deed, made January 6, 1852, by one Rutledge, administrator of B. W. Toliver, said administrator's deed being made pursuant to a sale of above mentioned certificate by the administrator under an order of the probate court of Harris county, made upon a petition filed by the administrator in said court October, 1851, and the sale was made December 2, 1851, and approved December 13, 1851, the deed being made to one Wm. R. Baker, from whom appellees claimed.

Appellants introduced in evidence a certified copy of the patent; proved their heirship to B. W. Toliver; that B. W. Toliver was killed at Goliad with Fannin in 1836, and offered to prove by the testimony of T. W. Toliver that B. W. Toliver was a volunteer from a foreign country in the armies of the republic of Texas, as alleged in the appellant's petition, and also that the heirs had never administered nor authorized administration on the estate of said B. W. Toliver; which being ruled out by the court, the appellants took a non-suit, and the court, over the objection of the appellants, proceeded to hear evidence offered by the appellees, and after the introduction by the appellees of the petition and order of sale and confirmation of sale from the Harris probate court, and of the administrator's deed, the court proceeded to give judgment for the appellees.

A witness, T. W. Toliver, had answered the third direct interrogatory, which inquired of him when and where B. W. Toliver fell. Afterwards, he was requested by a general interrogatory to state any matters " that might benefit either the plaintiff or defendant." In answer to that question he proceeded " to supplement," as he termed it, his answer to the third interrogatory, and then stated where his deceased brother volunteered for the defense of Texas, no direct or

cross interrogatory having directed his attention to that matter; he also stated other matters vital to the plaintiff's case, to which his attention had been called by no interrogatory. The action of the court below, on objections being raised to the answer, is stated in the opinion.

*Ellis & Herron* and *A. W. Dillard*, for appellants, that the certificate not being in existence when Wm. R. Baker bought, he acquired no title, cited: Ross *v.* Early, 39 Tex., 390; Bradshaw *v.* Smith, 53 Tex., 474; Walters *v.* Jewett, 28 Tex., 192; Babb *v.* Carroll, 21 Tex., 766.

That letters granted on the estate of a deceased soldier were void, they cited: Hart. Dig., secs. 1053, 1054; Duncan *v.* Veal, 49 Tex., 603; Withers *v.* Patterson, 27 Tex., 491.

That cloud can only be removed from a title which is the paramount legal title, they cited: Deen *v.* Wills, 21 Tex., 642; Herrington *v.* Williams, 31 Tex., 448; Keys *v.* Mason, 44 Tex., 140; Stephens *v.* Hix, 38 Tex., 656; O'Neal *v.* Manning, 48 Tex., 403; Horton *v.* Smith, 18 How., 393.

That the certificate was a pure donation from the republic, and formed no part of the estate, they cited: Todd *v.* Masterson, 61 Tex., 618; Duncan *v.* Veal, 49 Tex., 603; Warnell *v.* Finch, 15 Tex., 163; Eastland *v.* Lester, 51 Tex., 98.

*A. M. Jackson, Jr.*, and *D. A. Nunn*, for appellees, cited, in support of the action of the court below in excluding the evidence objected to: Dallam, 449.

In support of the probate sale, they cited: Guilford *v.* Love, 49 Tex., 715; Giddings *v.* Steele, 28 Tex., 733; Alexander *v.* Maverick, 18 Tex., 179; Murchison *v.* White, 54 Tex., 78; 47 Tex., 343.

On stale demand, they cited: Hudson *v.* Jurnigan, 39 Tex., 579; Vogelsang *v.* Dougherty, 46 Tex., 466; and Johnson *v.* Newman, 43 Tex., 628.

WALKER, P. J. COM. APP.—The act of 1841, "to protect the rights of the heirs and next of kin to the members of the Georgia Battallion and other volunteers from foreign countries who have fallen in the battles of the republic, or otherwise died in the limits of the state," forbade administration upon the estate of any such soldier by any other than his next of kin, unless such administrator produced an authority from the heirs or next of kin of such deceased soldier, authorizing him to take administration of the same. Art.

1398, Pasch. Dig.   That act further provides that "where adminis-
tration has been heretofore granted on the estates of deceased sol-
diers, to other than the heirs or next of kin of such soldiers, it shall
not be lawful for such administrator to sell the lands of such de-
ceased, without the consent or approbation of the heirs of such
deceased soldier; the document relied on as evidence of such consent
of said heirs to be recorded by the probate judge, he being satisfied
of the genuineness of the same before granting a decree of sale to
the administrator."   Art. 1399, Pasch. Dig.

The title from the administrator under which the appellees claim
must, under this law, fail, whether the administration was taken
before or after the passage of the act of 1841.   If taken before,
there was an absolute want of power of the probate court and the
administrator to convey the lands of the deceased soldier, except
by having the consent of the heirs given and recorded as the statute
provides it shall be.   If taken after, the court is powerless to grant
letters to another than an heir or next of kin, and thereby assume
jurisdiction over the property of the estate, except under the author-
ity given by such heirs or next of kin.

The facts established, taken in connection with the public history
of the country, show clearly that B. W. Toliver was a soldier in the
army of the republic of Texas, and it is a fact familiar to history
that many who fell at the massacre at Goliad were volunteers
from foreign countries.   T. W. Taliaferro, the brother of the de-
ceased, testified, in depositions, fully to the fact that he was a vol-
unteer from the state of Georgia when he fell at Goliad.   Mrs.
A. T. Chinn testified that he was massacred with Fannin's men at
Goliad, in 1836.   But the testimony of T. W. Taliaferro was ex-
cluded from the jury on objections made by the defendants to its
admissibility.   The correctness of that ruling is called in question
by the first assigned error.   The court did not err in excluding the
evidence; the interrogatory to which he answered the above stated
fact was general and indefinite, not calling attention to any special
matter.   The witness, in his answer, recurred to a previous inter-
rogatory, and he proceeded to amplify the answer he had made to
that (the third interrogatory) by his answer to the one under consid-
eration.   If his answer had been responsive to the third interroga-
tory it might have been admissible, if he had confined himself to
that matter.   The third interrogatory inquired only as to where
and when B. W. Toliver died.   The witness, however, proceeded to
give a full history of his brother's departure for Texas, and to show
many particulars connected with his death as one of Fannin's men

at Goliad.   The court did not err in sustaining the objection made to the evidence.

This evidence being necessary to maintain the principal point of the plaintiffs' case, they took a non-suit, and filed a motion for a new trial.   Under these circumstances they were entitled to the favorable consideration of the court in the exercise of its discretion in granting a new trial.   The evidence that was excluded went to the essential merits of the plaintiffs' case, and it was excluded on a point of practice concerning which their counsel may have been mistaken as to the law, but which fact would not necessarily deprive them of relief.   A new trial may be granted on the ground of surprise, even when such surprise is occasioned by the correct ruling of the court, and although negligence may be properly imputable to the attorney, if the party asking it has a meritorious cause of action and gross injustice would otherwise be done him.   Buford *v.* Bostick, 50 Tex., 371.   It is true that the plaintiff does not in his motion for a new trial specify, as one of the grounds therefor, surprise at the ruling of the court excluding his evidence, but he insists that the whole evidence that had been introduced to the court by the plaintiffs and by the defendants showed that the defendants were not entitled to recover the land and to have their title adjudged superior to that of the plaintiffs.   There was sufficient evidence before the court to show the character of the plaintiffs' title as compared with that which prevailed on the trial, and considering the fact that the merits of the plaintiffs' title would have been complete and the superior and paramount one, if the excluded testimony had been allowed, we think that the refusal to grant a new trial went to the very merits of the case, and that gross injustice would probably result in refusing to allow the plaintiffs another trial.   The plaintiff's claim for a new trial was meritorious and fundamental, and was addressed to the equitable powers of the court in the interest of broad and comprehensive justice.

The plaintiffs' evidence that had been introduced remained of course before the court, no less after than before they took a non-suit.   They, the plaintiffs, were retained in court against their will, and for all the purposes of the trial of the defendants' counter-suit in reconvention to remove as a cloud the plaintiffs' claim from their title, their evidence was unquestionably entitled to be considered. After taking the non-suit the plaintiffs were made to occupy the attitude of defendants as to plaintiffs' claim and prayer, and the defendants, as to it, were plaintiffs or actors.   The patent, which was in evidence, under which both parties claimed, recited on its face

that it was issued by virtue of location and survey of "Donation Warrant No. 296, issued by B. F. Hill, adjutant-general, on the 4th day of June, 1851, in consideration of said Toliver's having fallen with Fannin at Goliad." This recital affected those claiming under it with notice of the character of the plaintiffs' rights, and the excluded evidence which has been discussed showed, if it were before the court properly, that an *ex parte* judgment in favor of the defendants upon the evidence before the court would probably result in injustice. To entitle a party to relief to remove a cloud from a title, he must show that he has the paramount legal title. See Deen *v.* Wills, 21 Tex., 642; Herrington *v.* Williams, 31 Tex., 448; Keys *v.* Mason, 44 Tex., 140; O'Neal *v.* Manning, 48 Tex., 403; Horton *v.* Smith, 18 How., 393.

Under all the evidence it was far from being clear that the defendants had come up to this requirement in a manner so full as to warrant the court in feeling satisfied that, under a fair and full development of all the evidence which plaintiffs could bring to their aid on another trial, justice would be subserved in allowing the judgment to stand.

We will in conclusion refer to the cases of Duncan *v.* Veal, 49 Tex., 603, and Todd *v.* Masterson, 61 Tex., 618, as indicating proper rules and principles for the trial of causes like this. Similar facts exist in the former case.

We are of opinion that the judgment be reversed and the cause remanded.

Reversed and remanded.

[Opinion approved June 16, 1885.]