### F. O. SUMMERLIN ET AL. v. A. J. RABB ET AL.

#### No. 821.

**1. Administration of Soldier's Estate—Land Certificate—Expense of Procuring.**

Expense incurred in procuring the issuance of a land certificate 25 years after the death of the soldier on whose account it was granted, is not a debt against his estate, and could afford no ground for administration thereon.

**2. Donation Land Certificate the Property of the Heirs.**

Donation certificates granted by Sec. 12, of the Act of February 7, 1860, to "the heirs" of deceased soldiers of the Republic, belong to such heirs, and not to the estates of such soldiers.

APPEAL from Raines. Tried below before Hon. E. W. TERHUNE.

*B. B. Hart,* for appellants.—An administration granted 25 years after the death of the party whose estate is sought to be administered is absolutely void. The law conclusively presumes that all debts have been paid, and that no necessity could exist authorizing an administration. Duncan v. Veal, 49 Texas, 603; Cattle Co. v. Boon, 73 Texas, 554; Withers v. Patterson, 27 Texas, 492; Wardrup v. Jones, 23 Texas, 489; Paul v. Willie, 69 Texas, 261.

*Craddock & Looney,* for appellees.

LIGHTFOOT, CHIEF JUSTICE.—The statement of the case by appellants is not objected to by appellees, and is adopted.

This suit was filed in the District Court of Raines County, Texas, October 5, 1891, by F. O. Summerlin, W. P. Fitch, Sallie Summerlin, Mattie Limmerick, J. H. Limmerick, Fannie Bentley, Mary Davis, William Davis, Martha Transdale, J. M. Hood, Lizzie Molton, Thomas H. Molton, J. M. Hood, Julia Gibson, James Summerlin, J. H. Bentley, and William McKee, against A. J. Rabb and N. B. Rabb, appellees herein, in trespass to try title to 839 acres of land situated in Raines County, Texas, and patented to the heirs of A. Spain Summerlin, and fully described in plaintiffs' petition, and to recover rents since January 1, 1890, of the annual value of $1200.

Appellees answered by plea of not guilty, and general denial, and statute of limitation of five years, and improvements in good faith amounting to $2630; and further alleged that the land in controversy was patented by virtue of certificate issued by the State of Texas to the heirs of A. S. Summerlin, February 7, 1860, for services rendered by said A. S. Summerlin in the army of the Republic of Texas in 1836. That Thomas Summerlin, the father of A. S. Summerlin, for a valuable

consideration, by an instrument in writing duly executed and delivered by the said Thomas Summerlin to James H. Summerlin, sold all his right, title, and interest to all the claims to land of the estate of the said A. S. Summerlin, deceased, which deed was lost and never recorded, and can not be found. That said deed was made before said certificate was issued. That after said A. S. Summerlin had departed this life, and before said certificate issued, J. H. Summerlin, a brother of A. S. Summerlin, at an expense of $504.75, procured the issuance of the certificate belonging to the estate of A. S. Summerlin, to the heirs of A. S. Summerlin, embracing certificate No. 187, under which the land in controversy was located and patented. That said certificate was issued by virtue of "An Act to reorganize the Court of Claims," and extend the time for the presentation of claims for land and money against the Republic of Texas, approved February 7, 1860. That although said service was rendered by A. S. Summerlin in the years 1835 and 1836, said certificate had not been issued until after February 7, 1860. That under said law a very short time was allowed for the presentation of claims before the same would become barred. That the said J. H. Summerlin employed attorneys to assist him in getting up the proof and procuring the issuance of said certificate, at an expense of $504.75, which was necessary for the protection of the property of the estate of A. Spain Summerlin, deceased. Appellants further alleged that in January, 1861, James H. Summerlin was appointed administrator of the estate of A. S. Summerlin, deceased, by the Probate Court of Harrison County, Texas. That there was a necessity for said administration; that said debt of said J. H. Summerlin was a just debt against the estate of A. S. Summerlin, and was due and unpaid, and had been created for the benefit and protection of the property of said estate. That said James H. Summerlin qualified as such administrator by giving bond, etc., as required by law. That on January 28, 1861, the said James H. Summerlin filed his said claim for $504.75 against said estate in said Probate Court of Harrison County, Texas, which was duly allowed by said court as a just claim against said estate on January 28, 1861. That on said date, J. H. Summerlin filed in said court his application to sell the land certificate No. 187, together with other property of said estate, to pay said debt of $504.75 and costs of administration, and said court ordered said property to be sold on the first Tuesday in April, 1861, by said administrator for a fair price, to Sam A. Mosely; that said sale was duly confirmed by said Probate Court at the April term, 1861, thereof, and deed made in accordance therewith by said administrator. That appellees claim a regular chain of title from said Mosely down to them. A jury was waived and the cause tried before the court, October 6, 1893, and judgment rendered for defendants—from which this appeal was taken.

The only assignments of error which we deem it important to consider are the third and fourth, as follows:

"3d. The court erred in holding that the letters of administration

granted to J. H. Summerlin in January, 1861, by the Probate Court of Harrison County, Texas, upon the estate of A. S. Summerlin, deceased, were valid, A. S. Summerlin having been killed at the Alamo in 1836, leaving no debts and no property in Harrison County, Texas, and no necessity existing for an administration upon his estate anywhere, as shown by the evidence of J. H. Summerlin."

"4th. The court erred in holding that the debt incurred by James H. Summerlin in procuring the land certificate to issue to the heirs of A. S. Summerlin by the State of Texas for and on account of the soldier services of said A. S. Summerlin in the war of 1836 furnished any necessity for an administration upon the estate of A. S. Summerlin, deceased."

The facts upon this point are all fully set out in the special answer of appellees, and are sustained by the conclusions of the court below, as well as by the records of the Probate Court.

It fully appears that A. Spain Summerlin died at the Alamo in 1836. That the only debt upon which administration was sought in 1861, twenty-five years after the death of the intestate, was not a debt against the estate, but a debt incurred by one of the heirs for the expense of procuring the certificate, which expense occurred nearly a quarter of a century after the death of the party whose estate was sought to be administered. Such a debt can afford no proper ground for administration, and even if there was a proper administration, such debt could furnish no proper ground for an order of sale of property. It was in no sense a debt against the estate. Land and Cattle Co. v. Boon, 73 Texas, 554; Allen v. Peters, 77 Texas, 59; Paul v. Willis, 69 Texas, 261; Harwood v. Wylie, 70 Texas, 541; Duncan v. Veal, 49 Texas, 603; Wardrup v. Jones, 23 Texas, 489; Withers v. Patterson, 27 Texas, 492; Chinn v. Taylor, 64 Texas, 385.

We are referred by appellees to the case of Martin v. Robinson, 67 Texas, 368, as supporting the contrary doctrine. We do not so understand that case. While it lays down a broad and liberal rule by which the County Court can determine its own jurisdiction in granting letters of administration, it does not contravene the proposition that where the facts upon which the administration was granted and upon which the order of sale was made, appear upon the face of the record itself and show that such court had no jurisdiction to grant such orders, they are null and void, and will furnish no protection to a purchaser under them.

But there is another aspect of the case which does not seem to have been considered below. Even if there was a proper administration of the estate, and valid debts against it, was the land certificate upon which the land in controversy was located subject to administration? The certificate is fully set out in the record, and was issued to the heirs of A. Spain Summerlin, deceased, for 960 acres of land to which they are entitled as additional bounty for services in the army of the Republic of Texas, said decedent "having fallen at the Alamo," and said certificate

being issued in accordance with the provisions of "An Act to reorganize the Court of Claims, and to extend the time for the presentation of claims for land and money against the Republic and State of Texas," approved February 7, 1860.

Section 12 of that act reads as follows: "Said commissioner of claims shall perform all the duties of the adjutant-general, under the provisions of the 'Act for the relief of the heirs of those who fell with Fannin, Ward, Travis, Grant, and Johnson,' approved February 9th, 1850. He may also issue to said heirs bounty and donation warrants, upon the same proof that authorizes the issuance of headright certificates, as provided for in said act; provided, however, that no certificate shall hereafter be issued under provisions of said act unless the applicant shall prove his residence by the testimony of at least two credible witnesses; and provided, also, that no certificate shall be issued to an assignee under said act."

It is clear that the certificates issued under this act were purely a gratuity to the heirs of the heroes who died for Texas. The certificate under which the land in controversy was located was not provided for by any act in existence at the time of the death of A. Spain Summerlin, but was a provision made by law after his death for the benefit of his heirs, and the Legislature in making the law, in order to be clear that the donation should go to the heirs, added the proviso: "That no certificate shall be issued to an assignee under said act."

There was a similar contest in the case of Todd v. Masterson, 61 Texas, 618, where a certificate had issued under the act of December 21, 1837, to William C. M. Baker, who fell at the Alamo under Colonel Travis. The certificate was sold at administrator's sale, and the contest of title arose, as in this case, between the purchaser and the heirs of the decedent. Judge Stayton reviewed the authorities in an able opinion, and said: "At the time of the death of William C. M. Baker he had no existing right whatever to the land contemplated by the act of December 21, 1837; his services were to be otherwise compensated; as to him, there neither was contract, nor consideration to support a contract on which he could have asserted claim; the act bestowed a mere gratuity, the basis for and right to which arose long after his death, and the act itself conferred but a donation expressive of a nation's gratitude; and the only question is, For whose benefit was the donation made?

"Baker had died in the service of his country, and to him the donation could not be of any value. The record bears evidence that he must have been the head of a family; perhaps left a widow, children, or other heirs, who could be substantially benefited by the donation.

"Under such facts, in the absence of something in the act evidencing an intention to make the land donated a part of the estate of Baker, we are of the opinion that the donation, a mere gratuity from the government, vested in his heirs, and that it constituted no part of his estate."

This case clearly comes within the principle settled in that decision,

and we must hold that the donation to the heirs of A. Spain Summerlin, as shown in this certificate, was a gratuity from the government, vested in his heirs, and that it constituted no part of his estate.

For the above errors, the judgment of the court must be reversed; and as the record does not contain sufficient facts to authorize us to render judgment here settling all the rights and equities of the parties, it must be remanded for a new trial.

*Reversed and remanded.*

Delivered June 5, 1895.