THORNLEY & PITT ET AL. *v.* UNITED STATES (No. 3437)[1]

[1] T. D. 45325.

United States Court of Customs and Patent Appeals, November 20, 1931

*George R. Tuttle* (*Levi Cooke* of counsel) for appellants.

*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument October 15, 1931, by Mr. Cooke and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The suit here appealed relates to duties assessed by the collector of customs at the port of San Francisco, Calif., upon certain meats alleged to have been withdrawn by appellants from a bonded warehouse for use as supplies on board certain United States army transports. Duties were assessed under paragraph 701 of the Tariff Act of 1922.

The importers protested, claiming the merchandise to be free of duty by reason of a provision of law enacted as a part of the Tariff Act of 1897, 30 Stat. 151, which was in force at the time of the withdrawals and which reads as follows:

> SEC. 14. That the sixteenth section of an Act entitled "An Act to remove certain burdens on the American Merchant Marine and encourage the American foreign carrying trade, and for other purposes," approved June 26, 1884, be amended so as to read as follows:
>
> SEC. 16. That all articles of foreign or domestic production needed and actually withdrawn from bonded warehouses and bonded manufacturing warehouses for supplies (not including equipment) of vessels of the United States engaged in foreign trade or in trade between Atlantic and Pacific ports of the United States, may be withdrawn from said bonded warehouse, free of duty or internal revenue tax, as the case may be, under such regulations as the Secretary of the Treasury may prescribe; but no such articles shall be landed at any port in the United States.

Seventeen protests are involved, of which 14 were made by appellants, Thornley & Pitt, and three by their coappellants, J. Meyers & Co. As we understand the record, Thornley & Pitt were customs brokers for the latter-named company. So, apparently, J. Meyers & Co. are the real parties in interest in all of the protests.

By stipulation of counsel it was agreed that protest 326273–G/34035 of Thornley & Pitt and the collector's report thereon should be printed in the record as typical of all 14 Thornley & Pitt protests and reports, and that protest 352055–G/34234 of J. Meyers & Co. and the collector's report thereon should be printed in the record as typical of all three J. Meyers & Co. protests and reports. Those protests and reports not printed in the record are in the files of the case and have been inspected by the court.

There are on file also the original "Warehouse withdrawal and permit" papers used in the 14 withdrawals involved in the Thornley & Pitt protests. Each of these was made out upon what is known as "Form 7506," being a form prepared for use in making withdrawals under section 14, Tariff Act of 1897, *supra*, and the regulations prescribed thereunder by the Secretary of the Treasury.

Each of these permits recites—

Withdrawn conditionally free of duty under section —, paragraph —, act of September, 1922, for the purpose of ships' stores or supplies * * * to be used: U. S. A. T. * * *.

The ports between which each of the transports, for which the supplies were stated to be withdrawn, were plying, are given, all being from San Francisco to different points, to wit, certain Atlantic Coast ports and Manila and Guam. In each permit also appears the name of the particular transport upon which it was stated the supplies were to be used.

Each of the reports of the collector to the Customs Court in the cases covered by the Thornley & Pitt protests recites under the heading of "Reasons and authority for action"—

NOTE.—Articles 303 and 433, regulations of 1923, section 4131, Revised Statutes, and article 10, regulations of 1923.

Transports are not documented * * *.

It appears to be the practice in these withdrawals from bonded warehouses, under section 14, act of 1897, *supra*, for the collector to require of the person making the withdrawal a bond that he will produce from the master and mate of the vessel upon which they are used, affidavits to show that the supplies were landed on the vessel and that no portion of same was landed within the limits of the United States without the payment of duty. This is governed by regulations promulgated by the Secretary of the Treasury, presumably in conformity with the act.

Apparently, under the practice, the collector does not finally liquidate the withdrawal entries until the production and filing of these affidavits. When these are filed and the collector is satisfied, the bonds are canceled and the entries finally liquidated.

In the instant case, however, when the Thornley & Pitt conditional withdrawals came on for final liquidation the collector held that the merchandise was not duty free.

The Thornley & Pitt withdrawals covered a period extending from September 21, 1925, to June 8, 1926. All seem to have been finally liquidated and the duty assessed July 7, 1926. The protests were filed September 2, 1926.

The three original entries covered by the protests in the name of J. Meyers & Co. are also on file. These are "Warehouse withdrawal for consumption" entries made out on Form 7505 and show nothing

of intended use on transports. Two are dated August 12, 1926, and one is dated August 17, 1926. They seem to have been liquidated on the same dates filed. The protests are dated October 11, 1926.

Notwithstanding they were, on their faces, simply consumption entries, the report of the collector to the court in these cases recites, under the heading of "Reasons and authority for action," the same language which was used in the report on those cases covered by the Thornley & Pitt protests above quoted.

There is also testimony in the record, by an employee of Thornley & Pitt, which is deemed sufficient to show that applications were first made in the three consumption entry cases to file withdrawal entries as in the other cases, but same were refused by the collector and straight consumption entries required, on the ground that transports are not documented and, therefore, are not vessels "of the United States within the meaning of section 14 of the act of July 24, 1897."

Aside from this testimony, however, the question of fact as to the meats involved in the three entries, as well as those involved in the 14, being withdrawn for supplies for United States army transports, is settled by the concession made in the Government's brief that they were so withdrawn, and they will be so regarded and treated by us, as they evidently were by the court below. There is, of course, no concession as to their use or disposition after withdrawal.

The holding of the collector was evidently that the United States army transports are not vessels of the United States within the meaning of section 14, Tariff Act of 1897, because transports are not documented. Hence he assessed the meats involved for duty.

The protests made were all substantially in the same form, and the reasons were the same in all cases. We quote the following as typical of all:

The merchandise was withdrawn free of duty for ship's stores for use on board the United States army transport *Cambrai* during its voyage to New York and the return voyage to San Francisco. This vessel is engaged in the trade between the Atlantic and the Pacific and is a vessel of the United States; therefore said merchandise is entitled to withdrawal as described below free of duty as provided for in the shipping act of July 24, 1897, section 14, and Customs Regulations of 1923, articles 433 and 434. * * *

There were alternative claims but these are not insisted upon and will be treated as having been abandoned.

The Customs Court held that the collector was in error in his decision that United States army transports are not vessels of the United States but overruled the protests on the ground, as stated by it—

There is in the record no legal evidence that the transports in question were "engaged in foreign trade, or in trade between the Atlantic and Pacific ports of

the United States," nor that the supplies withdrawn were furnished to and consumed on said transports. Because of the failure of proof plaintiffs have failed to bring their importations within the purview of the statutes under which they claim.

Judgment was entered accordingly; motion for a rehearing was made and disallowed, and appeal was taken to this court by the protestants. They here ask that the case be reversed and remanded for retrial upon grounds hereinafter discussed.

In presenting the case before us certain questions of law are presented which we do not find it necessary or desirable to determine in view of our conclusion resulting from the failure of protestants to prove certain facts. Among them, is the question of whether the United States army transports are vessels of the United States in the meaning of section 14 of the Tariff Act of 1897. As has been stated, the collector held they were not.

The court below very pertinently said:

\* \* \* The question thus raised by the collector is an interesting one, and as far as we are advised, a novel one, not free from difficulty.

In view of our conclusion upon the facts of the case we omit any discussion or adjudication of this issue. But assuming without deciding that they are "vessels of the United States" as contended by appellants, then another issue is whether said transports are engaged in trade between Atlantic and Pacific ports of the United States. It is here insisted that the courts may take judicial knowledge of the nature of the services rendered by these transports and that these services are such as to render them "engaged in trade" in a legal sense. We are unwilling at this time so to hold as a definite conclusion of law.

Citations are made to certain acts of Congress, 10 U. S. C. A. 1371, 10 U. S. C. A. 1370, 10 U. S. C. A. 1367, which authorize the carrying, under certain conditions and subject to certain control by the Secretary of War, of merchandise and passengers on board the transports.

In the absence of any proof that the transports, for use upon which the supplies involved are claimed to have been withdrawn, were in fact carrying passengers or merchandise of the kinds mentioned in the statutes cited, we deem it proper to withhold judgment upon that issue also, and it should be understood that we are not intimating any opinion as to whether such specially-provided-for transportation, as an occasional business of these transports, would or would not of itself bring the transports within the "engaged in trade" provision.

Appellants have failed, as was held by the court below, to show certain facts without proof of which their protests may not be sustained.

Even if we felt justified in holding that as a matter of law the transports were engaged in trade in the sense of the statutes, and thus eliminate that question, the finding of the court below that "there is in the record no legal evidence * * * that the supplies withdrawn were furnished to and consumed on said transports," would have to be sustained.

In order to obtain the benefits of section 14, Tariff Act of 1897, it must affirmatively appear before the final liquidation that the supplies withdrawn were "landed on the vessel" and not landed therefrom at any port in the United States.

It, apparently, has been the practice of the collector to accept, as the regulations of the Secretary of the Treasury provide, affidavits of the masters and mates of the vessels to prove this. Being a matter of administrative procedure, the courts are not concerned with the manner or matter of the proofs required by the collector to satisfy him so long as they conform to the statute and the legitimate regulations made thereunder, but when the question passes from the collector to the courts the form and manner and matter of proof all become vital to a determination of the issue by them, and we have held that affidavits are not admissible as evidence of what may be stated in them in trials of protest cases in the United States Customs Court. *United States* v. *C. J. Holt & Co. (Inc.)*, 17 C. C. P. A. (Customs) 385, T. D. 43822. That holding was clearly foreshadowed by earlier decisions of this court in cases cited in said *Holt* case. In *Borgfeldt & Co.* v. *United States*, 11 Ct. Cust. Appls. 421, 424, T. D. 39433, decided by this court January 22, 1923, it was said:

* * * The affidavits * * * which were filed with the collector when the claims were presented to him, were properly forwarded to the board [now the United States Customs Court] as part of the proceedings before the collector, and were properly retained by the board among the files of the case, but at the trial before the board they were not competent evidence of the facts stated in them. * * *

The same principle was announced in *Eidlitz & Son (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 56, 58, 59, T. D. 39998, decided January 24, 1924. In the *Holt* case, *supra*, as in other cases, it was pointed out that the Secretary of the Treasury may not by regulation prescribe matter which can bind the courts as proof in the trial of a protest case.

There appear to have been in this case, as to the Thornley & Pitt protests, the affidavits of masters and mates such as the regulations prescribed. They were not forwarded by the collector to the court along with the entry papers and other documents required by the statute to be forwarded, but seem to have been sent to an appraiser, in whose office the trial court was holding its sessions for the taking

of proof, with a letter to the latter official from a deputy collector, saying:

If practicable and you perceive no other objection, will you please have the affidavits filed with their respective protests?

It may be remarked here that this procedure was an unusual one and, unexplained, seems to us not to have been the proper course. The affidavits, it would seem, were a part of the record, and it was the collector's duty to send them as such, and we conceive of no sound reason for sending them to an appraiser who had nothing to do with the issue involved.

The appraiser did not file them, and during the taking of the testimony appellants' counsel, apparently having obtained physical possession of the affidavits and the letter of the deputy collector, offered them and asked that they be incorporated *in the record*. Counsel for the Government objected to their admission "as incompetent and immaterial, affidavits not being admissible in protest cases." It is assumed counsel meant not admissible as *evidence*.

Ruling was reserved for determination by the court in deciding the case, and the papers were marked for identification. Exceptions also were reserved by counsel for both parties in anticipation of an adverse ruling.

In its opinion deciding the case the court said:

We are left in doubt, by the record, as to the status of the affidavits. If they were before the collector and considered by him when he was liquidating the entries, and he transmitted them to this court along with the protest and entry, "and the accompanying papers, and all the exhibits connected therewith," as he is directed to do by section 514 of the Tariff Act of 1922, then they were clearly part of the record, and no motion was necessary. It is doubtful, however, if they had that status. According to the statements of plaintiffs' attorney in his opening address and in his brief, they were sent by the collector to the appraiser. In such circumstances there is no ground at all for their admission over objection. At all events, they are not proof in this court of the facts stated therein. *United States* v. *Holt*, 17 C. C. P. A. 385, T. D. 43822, and cases cited therein.

If these affidavits had evidentiary character or could be considered by the courts in determining the case we should feel constrained to hold that the court below erred in not admitting them, although it is doubtful whether appellants' assignment of error is sufficient upon this point. As we interpret the court's opinion, *supra*, it did not hold that these affidavits were not a part of the record, as appellants' assignment of error No. 2 seems to allege, but did not admit them because they had been sent to an appraiser and not forwarded in the usual way by the collector.

However, under the decisions cited, *supra*, the affidavits have no evidentiary character, and we fail to discern of what value they

could be if admitted simply as "a part of the record." If the failure of the court to direct them incorporated was error, it was harmless error and furnishes no sound reason for reversing and remanding the case. This court will not reverse a decision of the court below upon a technical error which could not properly have affected the result of the case and was, therefore, harmless. *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, 24, T. D. 42714.

Appellants further urge, in substance, that they were taken by surprise in the case as to the nonadmissibility of the affidavits in question; that they proceeded upon the theory that the collector's only reason for assessing duty was that he did not believe that transports were vessels of the United States and, trying their case upon that theory, did not make the proofs as to use of the meats and their not being landed at any port of the United States, which upon a retrial will be made. Several authorities are cited upon the question of "Surprise as basis for a new trial." *Allen* v. *Chambers*, 51 Pac. (Wash.) 478, 480; *Bowden* v. *Morris*, Fed. Cas. 1715; *Starkweather* v. *Loomis*, 2 Vt. 573; *Chinn* v. *Taylor*, 64 Tex. Rep. 385, 389; 46 C. J. 218, sec. 163.

We have examined these authorities but are not convinced that the facts and circumstances of this case make the doctrine announced in those cases here applicable.

It appears from the petition for rehearing filed in the Customs Court that all the matters here urged were urged there, and that court in its sound discretion refused the motion. We do not think there was any abuse of the court's discretion.

In *Rietmann-Pilcer Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 152, 154, T. D. 42782, this court said:

Importers argue that this denial was an abuse of discretion. We regard this motion as in effect a request for rehearing in order to introduce additional testi-mony as to who was in fact the importer. There is nothing to show that this evidence was newly discovered or could not have been produced at the trial. The denial of the motion was not an abuse of discretion, and so not error. *Monroe-Goldkamp Co.* v. *United States*, 13 Ct. Cust. Appls. 545, T. D. 41429, and cases cited.

It may be further stated that appellants have not assigned as error the action of the Customs Court in refusing their petition to rehear. If relied upon it should have been assigned in this case. *United States* v. *Wakem & McLaughlin*, 14 Ct. Cust. Appls. 161, T. D. 41692, and cases therein cited.

The decision of the United States Customs Court is *affirmed*.

LENROOT, J., concurs in the conclusion.